IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTY DAWN BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-174-RAW-GLJ |
| | ) | |
| JUDY ELLIOTT, individually and in her | ) | |
| official capacity; | ) | |
| JAMES EARL HANNING, individually, and | ) | |
| in his official capacity; | ) | |
| WAGONER COUNTY E-911; and | ) | |
| BOARD OF COUNTY COMMISSIONERS | ) | |
| OF WAGONER COUNTY, jointly and | ) | |
| severally, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS OF DEFENDANT JUDY ELLIOTT
## AND BRIEF IN SUPPORT

COMES NOW, Defendant Judy Elliott ("Defendant Elliott") and hereby respectfully submits this Motion to Dismiss all claims against her in Plaintiff's First Amended Complaint (Doc. 2-6) under Fed. R. Civ. P. 12(b)(6). Defendant Elliott offers the following brief in support:

### INTRODUCTION

Plaintiff Misty Burke ("Plaintiff") is a former Wagoner County employee[1] who was allegedly terminated in January 2024. She filed suit against Defendants claiming she was subjected to retaliation in the form of a hostile work environment and eventual termination. Specifically, Plaintiff alleges that Defendant Elliott retaliated against her after Plaintiff allegedly reported misconduct by Defendant Elliott. Plaintiff claims this violated the First Amendment and the Fair Labor Standards Act. According to Plaintiff's own allegations, Defendant Elliott was placed on

---

[1] While Plaintiff states that she was an employee of E-911, she was actually an employee of Wagoner County, as shown by the Wagoner County Personnel Policy Handbook, which Plaintiff attaches and includes as part of her First Amended Petition (Doc. 2-6, p. 26). Additionally, Plaintiff's employment was at-will. (Doc. 2-6, p. 24).

administrative leave on March 12, 2024. Plaintiff's employment was then terminated by the Board of County Commissioners ten months later, on January 21, 2025.

Plaintiff's sparse factual allegations fail to establish any retaliation claim against Defendant Elliott. In fact, Plaintiff's own factual allegations show that Defendant Elliott was not even working for the County at the time Plaintiff was terminated. Even if Defendant Elliott was working for the County at the time, by Plaintiff's own allegations, it is the Board, not Defendant Elliott, that has the power to hire, fire, and appoint employees. To the extent that Plaintiff bases her claims on a hostile work environment, she provides no specific factual allegations that plausibly show she was subject to a hostile work environment, much less a hostile work environment that qualifies as an adverse employment action. For these reasons, Defendant Elliott should be dismissed from this case.

## ARGUMENTS AND AUTHORITIES

The *Twombly/Iqbal* pleading standard is well known to this Court. However, a few main points must be emphasized. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

The court need not credit bald assertions or legal conclusions. *Anspach v. Philadelphia*

*Department of Public Health*, 503 F.3d 256, 260 (3rd Cir. 2007) (citation omitted). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id*. (citation omitted). A "[p]laintiff's obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly* 127 S.Ct. at 1964-65). While a complaint does not need detailed factual allegations, the factual allegations must be enough to raise a right to relief above the speculative level. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). The Supreme Court stressed in *Iqbal* that it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability, and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 676.

With these standards in mind, when the Court looks beyond Plaintiff's conclusory allegations and examines the actual factual allegations in the Complaint, it is clear Plaintiff cannot state any claim against Defendant Elliott. Plaintiff makes the following claims against Defendant Elliott: (1) First Amendment retaliation; (2) FLSA retaliation; (3) FMLA interference and retaliation[2]; and (4) malicious interference with a contractual relationship. However, Plaintiff's Amended Complaint lacks any factual support for these claims. Particularly since the adverse employment actions claimed by Plaintiff occurred after Defendant Elliott was placed on administrative leave

## I.    PLAINTIFF CANNOT STATE A FIRST AMENDMENT CLAIM AGAINST DEFENDANT ELLIOTT

Plaintiff claims she engaged in protected speech when she submitted a grievance about Ms.

---

[2] It is unclear if Plaintiff even intends to bring an FMLA claim against Defendant Elliott, forcing Defendant Elliott address this claim out of an abundance of caution.

Elliott and when she submitted an Open Records Act request. She alleges that she was punished for such activity by Defendants Elliott and Hanning creating a hostile work environment and then being terminated. As a preliminary matter, Plaintiff's motion fails to establish how Defendant Elliott could have retaliated against her for submitting an Open Records Act request, because she was on administrative leave and had been for months when Plaintiff submitted her Open Records Act request. The only "speech" that Defendant Elliott was even present for were the grievances that Plaintiff submitted to the Board. But such grievances and any actions Defendant Elliott took cannot support a First Amendment retaliation claim as a matter of law.

"A public employee…must '***by necessity*** ... accept certain limitations on his or her freedom,' because his or her speech can 'contravene governmental policies or impair the proper performance of governmental functions.'" *Weintraub v. Board of Educ*., 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006)) (emphasis added); *see also Trimble v. Bd. of Cty. Commissioners of Tulsa Cty., Oklahoma*, 728 Fed. Appx. 789, 793 (10th Cir. 2018); *Brammer-Hoelter v. Twin Peaks Charter Acad*., 492 F.3d 1192, 1202 (10th Cir. 2007). Thus, the United States Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

*Garcetti* and *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563 (1968) provides the framework in evaluating First Amendment retaliation claims brought by public employees against their employers. The well-known "*Garcetti*/*Pickering*" Test consists of a five-part evaluation:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are

sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021); *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017). The first three factors are questions of law to be determined by a trial court, with the remaining two factors involving questions of fact for a jury. *Id*., at 910-11. For the reasons stated below, Plaintiff's First Amendment retaliation claims fail.

### A.    THE RELEVANT SPEECH WAS MADE PURSUANT TO PLAINITFF'S OFFICIAL DUTIES.

Under *Garcetti*, a pivotal issue is whether the subject statements were made pursuant to an employee's duties. Speech made pursuant to one's duties are not typically afforded constitutional protections under *Garcetti*. The boundaries of whether speech is made pursuant to an employee's duties can be determined by asking whether the "**speech *owes* its existence to a public employee's professional responsibilities**…." *Garcetti*, 547 U.S. at 421 (emphasis added). But a determination of whether speech was within an employee's job duties is a practical inquiry. "A court cannot simply read off an employee's duties from a job description because 'formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.'" *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008) (citing *Garcetti*, 547 U.S. at 424-25).

The Tenth Circuit has taken a broad, case-by-case approach, looking at the content of the speech, the chosen audience, as well as whether the speech was made pursuant to an employee's official duties. *Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010); *Brammer-Hoelter*, 492 F.3d at 1203 (10th Cir. 2007) ("[S]peech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform."); *see further Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)

(per curiam) ("Simply because [Plaintiff] wrote memoranda, which were not demanded of him, does not mean he was not acting within the course of performing his job.").

Additionally, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*." *Rohrbough*, 596 F.3d at 747; *see also Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 Fed. Appx. 691, 698 (10th Cir. 2017); *Ellison v. Roosevelt Cnty. Bd. of Cnty. Commissioners*, 700 Fed. Appx. 823, 829 (10th Cir. 2017) *Field v. Bd. of Water Comm'rs, City & Cty. of Denver*, 453 Fed. Appx. 811, 814-15 (10th Cir. 2011).

Any claim against Defendant Elliott can be disposed of on the first *Garcetti* factor. Plaintiff's speech owed its existence to her professional duties, as it was grievances directly related to her employment. Additionally, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*." *Rohrbough*, 596 F.3d at 747. In this respect, all Plaintiff's speech was made within her general chain of command. Specifically, the limited facts indicate that she wrote a complaint to HR regarding Defendant Elliott and that complaint was submitted to the Board of County Commissioners. In addition to being in their "chain of command," there is no relevant analogue for this type of speech by an ordinary citizen. This further underscores the fact that these incidents of speech fail to garner any constitutional protections: "For private citizens, there is 'no relevant analogue to' this type of internal reporting. Plaintiff's speech is not protected because it was made within the scope of their public employment." *Poff*, 683 Fed. Appx. at 698 (quoting *Garcetti*, 547 U.S. at 424); *see also Nixon v. City of Houston*, 511 F.3d 494, 498-99 (5th Cir. 2007); *Rohrbough*, 596 F.3d at 746 (finding speech by a hospital nurse and transplant coordinator on staffing issues were still considered within the scope of her official duties).

6

The foregoing aside, a practical examination of Plaintiff's claims against Defendant Elliott makes it clear that Plaintiff spoke as an E-911 employee, not a private citizen. The crux of Plaintiff's claims against Defendant Elliott arise from her employment. The very nature of Plaintiff's allegations is based on her employment. And, "[T]he ultimate question in determining whether speech falls within an employee's official duties is 'whether the employee speaks as a citizen or instead as a government employee[.]'" *Rohrbough*, 596 F.3d at 746 (quoting *Brammer-Hoelter*, 492 F.3d at 1203); *see also O'Connell v. Marrero-Recio*, 724 F.3d 117, 123 (1st Cir. 2013) ("O'Connell's 'speech' solely focused on events at her workplace and was made exclusively to fulfill her responsibilities as ARPE's Human Resources Director. This type of communication is the quintessential example of speech that owes its existence to a public employee's professional responsibilities and thus is not protected under the First Amendment.") (emphasis added).

## B. PLAINTIFF'S SPEECH WAS NOT ON MATTERS OF PUBLIC CONCERN.

Assuming that Plaintiff could overcome the first *Garcetti* hurdle, she would fail at the second, which requires the subject speech to be on a matter of public concern. "Speech is on a matter of public concern if it involves a matter of interest to the community." *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). "A statement 'does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 727 (10th Cir. 2011) (quoting *Salehpoor v. Shahinpoor*, 358 F.3d 782, 788 (10th Cir. 2004)). And "'[i]n analyzing whether speech constitutes a matter of public concern, we may focus on the motive of the speaker

7

and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'" *Id*. (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir.2000)).

Further, "[s]peech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity." *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1228 (10th Cir. 2014) (brackets and internal quotation marks omitted). However, "[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, what is *actually said* must meet the public concern threshold." *Nixon*, 784 F.3d at 1368 (original emphasis) (internal quotation marks omitted).

Plaintiff's grievances regarding Defendant Elliott are simply not a matter of public concern. By Plaintiff's own allegations her complaints were about Defendant Elliot's behavior as her supervisor. Plaintiff alleges that the complaints made were that Defendant Elliott was not paying overtime, harassed employees when they were on leave, was verbally abusive, and monitored employees' social medical. Even assuming that these allegations are true, Defendant Elliot's behavior and attitude towards her employees is not a matter of public concern. Plaintiff's complaints about Defendant Elliott are purely workplace frustrations. "[W]e have held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir.1996), disputes over the term of employment, L*ancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233–34 (10th Cir.1998), and workplace frustration, *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir.1989)." *Brammer-Hoelter*, 492 F.3d at 1206 (emphasis added). The facts alleged in support of Plaintiff's First Amendment claims are the very type that the Tenth Circuit has found to not constitute matters of public concern. As such, Plaintiff's claims fail as a matter of law.

8

**C.    PLAINTIFF HAS FAILED TO SHOW THAT DEFENDANT ELLIOTT TOOK ANY ADVERSE EMPLOYMENT ACTION AGAINST HER.**

The Tenth Circuit has opined that an "adverse employment action" is analogous to the standard applied in Title VII retaliation cases: "an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018); *see also Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238 (10th Cir. 2009) (stating that an adverse employment action is one that would "'deter a reasonable person from exercising his or her First Amendment rights'") (quoting *Brammer–Hoelter*, 492 F.3d at 1208). However, "we have never ruled that all such acts, no matter how trivial, are sufficient to support a retaliation claim." *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1340 (10th Cir. 2000) (emphasis added).

Plaintiff claims that both her termination and the "hostile work environment" are adverse employment actions. While termination is considered an adverse employment action, Plaintiff simply has not alleged any facts that show that Defendant Elliott had any hand in her termination. Plaintiff does not allege that Defendant Elliott had any decision-making authority regarding her employment, participated in any discussions about her termination, or engaged in any conduct proximate to the time of her firing. On the contrary, according to Plaintiff's own allegations the Board is the one who had the power to hire, fire, or appoint employees, such as Plaintiff. (Doc. 2-6, ¶ 5). Additionally, Plaintiff alleges that Defendant Elliott was placed on administrative leave approximately ten months before the termination occurred. Plaintiff offers no factual allegations suggesting Defendant Elliott had any role—direct or indirect—in the termination decision. In fact, her facts show that Defendant Elliott had no power over any decision to terminate her.

The only allegation that possibly could connect Defendant Elliott to Plaintiff's termination is a single, vague assertion that Defendant Elliott conspired with Defendant Hanning and two nonparties to bring about Plaintiff's termination. (Doc. 2-6, ¶ 28). However, there is simply no factual support for such a conclusion, especially considering that Defendant Hanning alone does not even have the power to terminate Plaintiff's employment. Courts routinely reject such conclusory statements absent concrete facts suggesting coordinated conduct. *See Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The absence of any factual allegations connecting Defendant Elliott to Plaintiff's termination requires dismissal of any claim based on the termination.

Plaintiff also claims that Defendant Elliott retaliated against her by creating a hostile work environment. While a hostile work environment can serve as an adverse employment action, it must be so severe that it rises to the level of a constructive discharge. *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1119 (D.N.M. 2011) (collecting cases). This means that Plaintiff must first establish that the working environment was hostile, meaning that it she must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir. 1998). Plaintiff then must take it a step further and show she was "constructively discharged when the employer by [her] illegal discriminatory acts makes working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Hall v. U.S. Dept. of Lab., Admin. Rev. Bd*., 476 F.3d 847, 851 (10th Cir. 2007).

Here Plaintiff alleges no actions that would establish a hostile working environment, much less a working environment that was so hostile that Plaintiff would feel the need to resign. Plaintiff alleges no pattern of harassment, no ongoing mistreatment, and no repetition of any conduct. Her

claim that Defendant Elliott created a hostile work environment is based on actions taken over the course of one day before Defendant Elliott was placed on administrative leave. (Doc. 2-6, ¶16). This hardly seems like the severe and pervasive actions required to establish a hostile work environment.

Even if the Court assumed Plaintiff established a hostile work environment, she cannot take the required next step and demonstrate that the hostile work environment resulted in a constructive discharge. Plaintiff never alleges she resigned. In fact, she went on to be promoted and to work for ten more months before she was terminated. Plaintiff also does not allege that Defendant Elliott's conduct made her working conditions unbearable. The law simply does not support treating this one isolated incident as grounds for a hostile work environment claim – much less a constructive discharge claim. Plaintiff simply cannot establish that Defendant Elliott took any adverse employment action against her, nor can she show that any actions Defendant Elliott took were connected to her speech. The First Amendment claim against Defendant Elliott should be dismissed.

## II.    PLAINTIFF CANNOT ESTABLISH A FLSA CLAIM AGAINST THIS DEFENDANT.

Plaintiff claims that Defendant Elliott retaliated against her by terminating her and creating a hostile work environment. (Doc. 2-6, ¶ 47). But again, Plaintiff's Amended Complaint cannot state an FLSA claim as a matter of law as she cannot show that she suffered an adverse employment action at the hands of Defendant Elliott. Not only that, she cannot show that Defendant Elliott was an "employer" at all under the "economic realities" test as applied to FLSA claims.

The Fair Labor Standards Act ("FLSA") defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1341 (10th Cir.

2025) (quoting 29 U.S.C.§ 203(d)). The Tenth Circuit has sporadically permitted FLSA suits for individual liability and recently affirmed a district court's use of the four-factor "economic reality" test to determine whether an individual is an "employer." *Id.*; *see also Gomez v. Epic Landscape Productions, L.C.*, No. 22-CV-2198-JAR, 2025 WL 1262463, at \*12 (D. Kan. Apr. 30, 2025) (explaining that *Walkingstick Dixon* is an FMLA case but observing that "the Tenth Circuit relies on its prior FLSA decisions to find that individual liability under the FMLA is determined employer status under the FMLA") (citation omitted). This "economic reality" test requires a district court to determine "whether the alleged individual has the power to hire and fire employees; supervises and controls employee work schedules or conditions of employment; determines the rate and method of payment; and maintains employment records. *Id.* As discussed below in Section III at 13-14, there are no facts alleged to show that Defendant Elliott would constitute an "employer" under the FLSA for liability purposes. Defendant adopts and incorporates that analysis here and urges the Court to dismiss Plaintiff's FLSA claim in its entirety.

Moving to the "merits" of her FLSA claim, dismissal is still warranted. To state a FLSA retaliation claim, Plaintiff must show that (1) she engaged in protected activity under the FLSA, (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment action. *Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997).

Even assuming that Plaintiff engaged in some protected activity under the FLSA, she has provided no factual support for her claim that Defendant Elliott was individually responsible for any decision that the Board made regarding her employment. As already discussed, Defendant Elliott had no power to terminate Plaintiff and was not even an employee of the County at the time she was terminated. Again, the only actions that are directly attributable to Defendant Elliott are

those taken on March 12, 2024. Plaintiff again tries to couch these actions as ones creating a hostile work environment that can serve as an adverse employment action. But, similar to adverse employment actions under the First Amendment, for FLSA claims a hostile work environment must be so hostile that "a reasonable person would have to view the conditions in the workplace as intolerable, such that she would feel compelled to resign." *Thomas v. Pauls Valley Boomerang Diner*, LLC. 320 F. Supp. 3d. 1253 (W.D. Okla. 2018).  As previously discussed, by Plaintiff's own allegations, that is not the case here. Defendant Elliott's actions did not lead Plaintiff to resign. Plaintiff received a promotion and continued to work for the County for ten more months. Without facts that establish an adverse employment action, Plaintiff's FLSA claim must also fail.

## III.    PLAINTIFF HAS NOT ALLEGED AN FMLA CLAIM AGAINST DEFENDANT ELLIOTT.

Plaintiff's allegations regarding her FMLA claims lack specificity, to the point that it is unclear if she even wishes to bring an FMLA claim against Defendant Elliott. She first claims the FMLA claim is brought against all defendants, but then only alleges Interference against Hanning and the Board and Retaliation against the Board, Hanning, and E-911. Even if Plaintiff wished to hold Defendant Elliott liable for any FMLA claims, she cannot do so as for two reasons. First, by Plaintiff's own allegations Defendant Elliott never had the power to hire, fire, or appoint employees, as this power lies with the Board. (Doc 2-6, ¶ 5). Even if the Court ignores this, Plaintiff still fails to allege facts that show Defendant Elliott was even an employer for the purposes of the FMLA at the time Plaintiff took FMLA leave. Especially when one considers the fact that Defendant Elliott was on administrative leave at the time Plaintiff took FMLA leave and at the time she was terminated.

When a plaintiff asserts an FMLA claim against an individual, she must establish that the defendant is her employer. *See DeShazer v. L&W Supply Corp.,* No. CIV-23-45-F, 2023 WL

2977733, at *5 (W.D. Okla. Apr. 17, 2023) (citing *Miles v. Unified School District No. 500, Kansas City, Kansas*, 347 F. Supp. 3d 626, 629 (D. Kan. 2018) (citing 29 U.S.C. § 2615(a)(1), (2))). This Court applies the "economic reality test" in order to determine if an individual qualifies as an employer under the FMLA. *See DeShazer,* 2023 WL 2977733 at *5 (citing *Gnapi v. Am. Farmers & Ranchers Mut. Ins. Co*., No. CIV-21-1017-F, 2022 WL 1213131, at *1 (W.D. Okla. Apr. 25, 2022)). The following nonexclusive factors are considered by the Court when it applies the economic reality test:

(i)     whether the alleged employer has the power to hire and fire employees;

(ii)    whether the alleged employer supervises and controls employee work schedules or conditions of employment;

(iii)   whether the alleged employer determines the rate and method of payment; and

(iv)    whether the alleged employer maintains employment records.

*Id*. (quoting *Zisumbo v. Convergys Corp*., Case No. 1:14-cv-00134, 2020 WL 3546794, at *11 (D. Utah June 30, 2020)).

To the extent Plaintiff wishes to bring an FMLA claim against Defendant Elliott, such a claim cannot survive a motion to dismiss. According to the economic reality test, along with the Plaintiff's own allegations, Defendant Elliott was not considered an employer under the FMLA at the time the Plaintiff took FMLA leave. Plaintiff took FMLA leave in June of 2024. (Doc. 2-6, ¶ 22). Defendant Elliott was on administrative leave at this time and had been since March of 2024. (Doc. 2-6, ¶ 21). Plaintiff alleges no facts that show how Defendant Elliott, who was not even working for the County at the time, could have the power to hire or fire employees, to control work schedules, to determine rates of pay, or to maintain employment records. Again, Plaintiff's own facts even specifically state that it is the Board that has the power to hire or fire employees. (Doc 2-6, ¶ Plaintiff has not, and cannot, show that Defendant Elliott was an employer for the purposes

of the FMLA and thus any FMLA claims she intends to bring against Defendant Elliott must be dismissed.

## IV.    PLAINTIFF HAS NOT ALLEGED A VALID TORTIOUS INTERFERENCE CLAIM.

Finally, Plaintiff also asserts that Defendant Elliott maliciously interfered with her contractual relationship by terminating her and otherwise retaliating against her. But this claim was doomed from the start, as Plaintiff has not alleged any facts that show Defendant Elliott interfered with her employment relationship.

The first requirement of any tortious interference claim is that Plaintiff must show "interference with a business or contractual right." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1165 (Okla. 2009) ("The terms 'malicious interference,' 'intentional interference,' and 'tortious interference' with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts[.]") (internal citations omitted). But as discussed above, Plaintiff has not plausibly alleged that Defendant Elliott had any role in the termination of her employment. Again, the only actual conduct attributable to Defendant Elliott occurred months before Plaintiff's termination, and there are no facts suggesting that it had any actual impact on the terms, conditions, or continuation of Plaintiff's employment. Because there is no factual basis to conclude that Defendant Elliott caused or contributed to the end of Plaintiff's employment or otherwise interfered with her contractual relationship, the tortious interference claim must be dismissed.

## CONCLUSION

WHEREFORE, premises considered, Defendant Elliott, respectfully requests the Court grant her Motion and dismiss all of Plaintiff's claims against her as they fail to state a claim upon which relief may be granted.

Respectfully submitted,

Jessica James Curtis
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
Jessica James Curtis, OBA No. 35140
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone:   (405) 235-1611
Facsimile:    (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
jjamescurtis@piercecouch.com
*Attorneys for Defendant Judy Elliott*

## CERTIFICATE OF SERVICE

I certify that on the 13th day of May, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action:

Brendan McHugh
Jordan Miller
Scott Eudey

s/Jessica James Curtis
Jessica James Curtis