IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY DAWN BURKE, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No.: 25-CV-174-RAW-GLJ |
| v. | ) ) |
| (1) JUDY ELLIOTT, individually; | ) |
| (2) JAMES EARL HANNING, individually; | ) |
| (3) WAGONER COUNTY E-911; and | ) |
| (4) BOARD OF COUNTY COMMISSIONERS of | ) |
| WAGONER COUNTY; jointly and severally; | ) ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANTS HANNING, AND BOARD OF COUNTY COMMISSIONERS OF WAGONER COUNTY'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW, Plaintiff, Misty Dawn Burke (Plaintiff), and hereby submits her response to the motion to dismiss filed by Board of County Commissioners of Wagoner County and James Hanning (collectively movants) [Doc. 19]. In support, Plaintiff alleges as follows:

**I.    INTRODUCTION**

Plaintiff initially filed this action in State Court on March 6, 2025, and on April 17, 2025, Plaintiff filed a First Amended Petition (FAP) [Doc. 2-6]. Plaintiff's FAP[1] is the controlling document. Plaintiff's FAP[2] contains the following federal claims[3] against the Board of County

---

[1] An amended petition supersedes the original and renders it of no effect. *See Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.,* 555 U.S. 438 n. 4 (2009); *Mink v. Suthers*, 482 F. 3d 1244, 1254 (10th Cir. 2007); *Miller v. Glanz,* 948 F. 2d 1562, 1565 (10th Cir. 1991).

[2] Oklahoma refers to the initiating document as a Petition while Federal Courts refer to it as a Complaint. *See* 12 O.S. § 2003 and Fed. R. Civ. P. 3, respectively. Plaintiff will refer to the document as first amended petition or FAP, its name when filed in state court.

[3] Plaintiff filed a stipulation of dismissal, dismissing Wagoner County E-911 as a party and dismissing the Oklahoma Open Records Act (ORA) claims [Doc. 22]. Because E-911 has been dismissed, Plaintiff does not address its arguments contained in the motion. Similarly, Plaintiff

Commissioners of Wagoner County[4] (Board) and James Hanning (Hanning): 42 U.S.C. § 1983 (1983) retaliation as to Hanning; Fair Labor Standards Act, 29 U.S.C. § 203, *et. seq.,*(FLSA) as to Hanning and Board; Family and Medical Leave Act 29 U.S.C. § 2601 *et. seq.,* (FMLA) retaliation and interference as to Hanning and Board. [Doc. 2-6]. Plaintiff's FAP contains the following state claims as to Hanning and Board: breach of contract as to Board; promissory estoppel as to Board; malicious interference with a contractual relationship as to Hanning.

Plaintiff is a former employee of the Board, being employed with Wagoner County E-911, a public entity controlled by the Board. Defendant Hanning is Chairman of the Board and was either a County Commissioner or chairman of the Board during the events at issue in the FAP. Movants in their motion either diminish Plaintiff's allegations in the FAP by either ignoring the allegations or misinterpreting the allegations. Similarly, movants amplify facts not relevant on a motion to dismiss to detract from the allegations in the FAP. This includes asserting that a FMLA interference claim somehow does not exist because Plaintiff was allowed time off. This wholly ignores Plaintiff's allegations that while on FMLA leave she was contacted by Hanning and admonished by him for an alleged (false and pretextual) policy violation [Doc. 2-6, ¶23]. Burke returned to work earlier than medically necessary as a result of Hanning, and this conduct satisfies the requirements of an interference claim as discussed more fully, *infra.*

Similarly, movants characterize Plaintiff's request for records under the ORA as seeking "personal text messages between Hanning and Judy Elliott from March 12, 2024." *See* Movants mot. at p. 3, [Doc. 19]. But, these messages are not private just because they were sent or

---

does not address the Open Records Act Claim. This response does not address the claims against Judy Elliott as that will be done in a separate motion.

2

received from a private device. [Doc. 2-6, Ex.2B]. Hanning texted Judy Elliott during the emergency meeting the names of the people who submitted grievances against Judy Elliott. This request is far from "private."

Movants also assert that Hanning did not retaliate because he is not allowed to take action under the Board policy. However, this is misleading because it implies (falsely) that Hanning followed the policy. If Hanning followed policy he would not be a party to this action in the first place. Finally, movants miscast Plaintiff's breach of contract claim as creating a contract of employment. Rather, Plaintiff is not alleging that she had a contract of employment that altered her at-will status but rather a contract that guarantees certain rights and procedures. As discussed, *infra,* these are distinct under prevailing law.

## II.     STANDARD OF REVIEW ON A MOTION TO DISMISS

In this case, Board and Hanning are seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Under this standard, dismissal is proper only if "viewing the well-pleaded factual allegations in the [FAP] as true and in the light most favorable to the non-moving party, the [FAP] does not contain enough facts to state a claim to relief that is plausible on its face." *Anderson v. Suiters*, 499 F.3d 1228-1232 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). The allegations need only "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Under Fed. R. Civ. P. 8(a)(2), a Plaintiff is merely required to state a short and plain statement of the facts entitling her to relief. *Id.* Plaintiff has done this and as such, the motion to dismiss should be denied.

## III.    PLAINTIFF'S FAP STATES A FIRST AMENDMENT RETALIATION CLAIM AS TO HANNING

Plaintiff has asserted, *inter alia,* 1983 claims predicated on violations of her rights under the U.S. Constitution. 1983 provides redress for constitutional violations. *Id.*  Here,

3

Plaintiff has alleged First Amendment retaliation. "An act in retaliation for the exercise of a constitutionally protected right is actionable under …. 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner* 899 F. 2d 940, 948 (10th Cir. 1990). When analyzing a First Amendment claim under 1983, courts utilize the *Pickering/Connick* test based on the seminal cases of *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) and *Connick v. Meyers,* 461 U.S. 138 (1983) and subsequently qualified in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). In *Garcetti*, the Supreme Court qualified the *Pickering/Connick* test to hold that the speech at issue cannot be part of the employer's official job duties, or else it is unprotected. Here, the speech was not part of Plaintiff's job duties.

Hanning humorously asserts that since he cannot take action without the other Commissioners he could not have retaliated. This plainly ignores the allegations. Just because Hanning is prohibited from acting unilaterally does not mean that he didn't. The allegations are that Hanning texted Judy Elliott the names of the individuals who complained about her-which by the way- is a clear violation of Board policy. Further, Plaintiff submitted an ORA request for these communications, and Plaintiff was fired a month later.

A public employer "can not retaliate against an employee for exercising her constitutionally protected right of free speech." *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). A matter is a public concern and hence constitutionally protected if it is a matter "of interest to the community, whether for social, political or other reasons…" *Dill*, 155 F.3d at 1202. If the speech relates "to any matter of public, social or other concern to the community also it is protected speech. *McFall v. Bednar,* 47 F.3d 1081, 1089 (10th Cir. 2005). The Supreme Court has recognized that "constitutional violations may arise from the deterrent, or 'chilling,'

4

effect of governmental [efforts] that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972).

The test consists of five elements: (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Id.* To prevail, a plaintiff must establish all five elements. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007).

As to whether Plaintiff was speaking as an employee or citizen, case law supports Plaintiff. "If the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009). Here, Plaintiff made an internal complaint about Judy Elliott and made two ORA requests, including a request seeking communications between Hanning and Elliott. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Frank,* 573 U.S. 228, 240-241 (2014). If the speech involves "the type of activities that [the employee] was paid to do," then it falls within the scope of an employee's duties. *Green v. Bd. of Cty. Comm'rs,* 472 F.3d 794, 800-01 (10th Cir. 2007).

"The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. If the speech involves "the type of activities that [the employee] was paid to do," then it falls within the scope of an employee's duties. *Green v. Bd. of Cty. Comm'rs,* 472 F.3d 794, 800-01 (10th Cir. 2007). Here, the speech was not within Plaintiff's job duties as making an HR complaint against a superior is not a job duty of a 911 dispatcher. Neither is sending an ORA request.

### III.  PLAINTIFF HAS STATED AN FLSA WAGE CLAIM AGAINST THE BOARD

Plaintiff has made an FLSA claim for unpaid wages against the Board. Plaintiff's FAP alleges that while employed by the Board she worked overtime and did not get compensated for it. In other words, Plaintiff has alleged the precise elements needed.  The FLSA requires employers to pay overtime to workers who exceed forty hours a week. 29 U.S.C. § 207(a)(1). Under § 207(a)(1), the employer must have actual or constructive knowledge of the overtime. *Id.*; *McKnight v. Kimberly Clark Corp*., 149 F.3d 1125, 1130 (10th Cir. 1998). Here, Board had knowledge of a lack of overtime as it received numerous complaints addressing these issues. The FLSA allows public employers to compensate employees for overtime work by granting them compensatory time instead of paying them overtime wages. 29 U.S.C. § 207(o). Compensatory time is paid time off, to comply with this part of the FLSA, the public employer must provide the compensatory time at a rate not less than one and one-half hours for each hour of overtime worked. *Id*. Compensatory time can accumulate, like vacation time. If employees do not use their accumulated compensatory time, under certain circumstances, the FLSA requires the public employer to pay the employees cash compensation. 29 U.S.C. §§ 207(o)(3)-(4). In *Christensen v.*

*Harris County*, 529 U.S. 576 (2000), the Supreme Court held that the FLSA does not prohibit public employers from compelling employees to use compensatory time.

Here, in addition to the FLSA applying to the Board, it also assured its compliance by virtue of the handbook. The Board is trying to take advantage of the fact that many of the records are in the possession of the Board, nevertheless, the allegations of the FAP are sufficient.

IV.     **PLAINTIFF HAS STATED A CLAIM OF INDIVIDUAL LIABILITY AGAINST HANNING UNDER THE FLSA**

Defendant Hanning has asserted that the FAP does not allege a FLSA retaliation claim. This argument is misguided. First, individual liability is allowed under the 10th Circuit case law. *Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Reg.*, 125 F.4th 1321, 1341 (10th Cir. 2025). *Dixon* was an FMLA case but by holding that individual liability exists under the FMLA, the Court relied on FLSA case law. *Id.* The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Dixon* 125 F. 4th at 1341 (quoting FLSA§ 203(d)). The *Dixon* court reiterated that FLSA individual liability is allowed under the FLSA. *Id.* (citing *Hodgson v. Okada*, 472 F.2d 965, 968-69 (10th Cir. 1973)). The courts use the economic reality test to determine whether there is an employee-employer relationship. *Dixon* 125 F. 4th at 1341-1342 (citing *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018)).

Under the economic reality test Courts analyze:

(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Acosta*, 905 F.3d at 1160. Under this test, no single factor is determinative and courts look to see if the person has the right to control the employee, whether they were working directly or

indirectly for the employer and whether the individual had power to control the employee. *Graziadio v. Culinary Inst. of Am.,* 817 F.3d 415, 422-423 (2nd Cir. 2016). Here, the allegations are that Hanning was the Chairman of the Board, he engaged retaliatory acts, he significantly contributed to Plaintiff's firing. Thus, Plaintiff's allegations satisfy the criteria for individual liability and she has stated a claim as to Hanning.

## V.  PLAINTIFF HAS STATED AN FLSA RETALIATION CLAIM AS TO BOARD AND HANNING

Plaintiff has alleged a retaliation claim under the FLSA. The FLSA has a strong anti-retaliation provision. 29 U.S.C. § 215. The anti-retaliation provision provides:

> It shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee,"

*Id.* 215(a)(3).

The Tenth Circuit has held that even the informal and unofficial assertion of rights is still protected under the FLSA. *McKenzie v. Renberg's, Inc*., 94 F.3d 1478, 1486 (10th Cir. 1996); *Love v. Re/Max of Am., Inc*., 738 F.2d 383, 387 (10th Cir. 1984)( holding that the "unofficial assertion of rights through complaints at work" is protected activity under the FLSA). A Plaintiff must allege 1) he or she engaged in an activity protected by the FLSA; 2) that he or she suffered adverse action by the employer after or contemporaneously with such activity and 3) a causal connection existed between the employees' activity and employer's adverse action. *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390, 1394 (10th Cir. 1997).

Here, Plaintiff has alleged that Hanning was Chairman of the Board and was a decision maker in her termination. [Doc. 2-6]. Movants attempt to counter these allegations by ignoring them and assert that Hanning is not allowed to terminate Plaintiff under the policy. But this

ignores the allegations. Also, just because he can't does not mean that he didn't. Indeed, his violating policy in terminating Plaintiff is indicia of retaliation. Plaintiff alleged that during executive session wherein the names of the people who complained about Judy Elliott were disclosed, Hanning, in violation of the policy, texted Judy Elliott the names of the people who complained. Plaintiff's complaint that she made against Judy Elliott was protected under the FLSA as was her request for evidence regarding her complaint by asking for the Hanning/Elliott messages. Further, Clerk Lori Hendricks admitted that the request was forwarded to the Commissioners and also that she would follow-up with the request. Plaintiff was fired. These allegations are sufficient.

Movants are incorrect about the last date of protected conduct. The last protected conduct was not March of 2024, when Plaintiff made her complaint, rather when she submitted her ORA requests seeking the communications between Hanning and Elliott. This occurred in December of 2024. The employment status of Plaintiff was decided at the January 21, 2025 special meeting. "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1228 (10th Cir. 2006). Moreover, the Tenth Circuit has explained that "a pattern of retaliatory conduct [that] begins soon after the [protected activity] and only culminates later in actual discharge" may sometimes preclude summary judgment notwithstanding the absence of close temporal proximity between the protected activity and the employer's ultimate decision to terminate the employee. *Marx v. Schnuck Mkts., Inc*., 76 F.3d 324, 329 (10th Cir. 1996); *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1204 (10th Cir. 2008). Notably, the motion to dismiss standard is less onerous than a summary judgment standard. Therefore, the motion to dismiss the FLSA claims should be denied in all respects.

## V. PLAINTIFF HAS STATED AN FMLA CLAIM AS TO BOARD AND HANNING

Plaintiff has alleged an FMLA claim against Board and Hanning. Defendant asserts that the FMLA claims should be dismissed. Contrary to Defendant's argument, Plaintiff has stated an FMLA claim. The FMLA permits eligible employees to take leave for serious health conditions and prohibits employers from retaliating against employees for doing so. 29 U.S.C. §§ 2612(a), 2615(a)(2); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006).

### A. FMLA Interference

The Tenth Circuit has distinguished between an FMLA interference claim and an FMLA retaliation claim. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). To prevail on her FMLA interference claim, plaintiff must show the following: (1) That she was entitled to FMLA leave; (2) That some adverse action by the employer interfered with her right to take FMLA leave; and (3) That the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Id.* (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). The Act forbids an employer to "interfere with, restrain, or deny the exercise of or attempt to exercise" this protected leave. 29 U.S.C. § 2615(a)(1)."If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." *Id.* An employer's failure "to follow the notice requirements . . . may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e). FMLA interference "is a violation regardless of the employer's intent." *Metzler*, 464 F.3d at 1180. Under the FMLA, an eligible employee is "entitled to a total of 12 workweeks of leave" for reasons including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29

U.S.C. § 2612(a)(1); *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1147 (10th Cir. 2004). If an employer interferes with this right by taking adverse action that was "related to the exercise or attempted exercise of [the eligible employee's] FMLA rights," then the employer may be liable under an FMLA entitlement theory. *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005); 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."). Here, Plaintiff has alleged that her FMLA was interfered with.

### B. Retaliation

Ultimately, to succeed on an FMLA retaliation claim, plaintiff must show that: (1) she engaged in a protected activity; (2) [The defendant] took an action that a reasonable employee would have found materially adverse; and (3) There exists a causal connection between the protected activity and the adverse action. *Campbell*, 478 F.3d at 1278 (quoting *Metzler* 464 F.3d 1164, 1171 (10th Cir. 2006). The allegations of the FAP also state an FMLA claim as well.

### VI. INDIVIDUAL LIABILITY EXISTS AS TO HANNING

Plaintiff has alleged an individual claim as to Hanning. The FMLA defines "employer," in relevant part, as any person . . . who employs 50 or more employees" and the definition includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer," as well as any "public agency. . . ." 29 U.S.C. § 2611(a)(4)(A). The *Dixon* opinion discussed supra addressed this issue. *Dixon,* 125 F. 4th at 1341. Individual liability exists under the FMLA for the same reasons.

### VII. A CLAIM FOR MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AS TO HANNING EXISTS

Plaintiff has alleged a claim against Hanning for malicious interference with a contractual relationship. Hanning argues that Plaintiff's claim for malicious interference with a contractual

relationship should be dismissed. Hannings' assertions are misplaced as Oklahoma law is clear. *Fulton v. People Lease Corp.*, 241 P.3d 255, 263-264, 2010 OK CIV APP 84.

To establish a claim for interference with contract, the Plaintiff must demonstrate the following:

1. That she had a business or contractual right that was interfered with.

2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged, nor excusable.

3. That damage was approximately sustained as a result of the interference.

*Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 425, 428; 1979 OK 41; *Navistar Intern. Transp. Corp. v. Vernon Klein Truck and Equipment,* 919 P.2d 443, 446, 1994 OK CIV APP 16; *Dill v. City of Edmond,* 155 F.3d 1193, 1207-08 (10th Cir. 1998). In the absence of a contractual relationship, Plaintiff "must show either the prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 529 P.2d 987, 990, 1974 OK 34. Here, Plaintiff has alleged this.

To the extent that Hanning asserts that a contract is required, case law disagrees. Numerous federal courts have already ruled, consistent with Oklahoma law, that a contract is not required. In *Cooper v. Northwest Rogers Cty. Fire Prot. Dist.,* (N.D. Okla., 2017), Judge Eagan, citing Oklahoma law and numerous federal cases, explicitly held that a contract is not required:

> "The Court will follow the Oklahoma Court of Civil Appeals and find that an at-will employment relationship can form the basis for a claim of malicious interference with a contractual relationship…."

*Cooper v. Northwest Rogers Cty. Fire Prot. Dist.*, No. 17-CV-00320-CVE-FHM, slip op. at 9-10 (N.D. Okla. Aug. 28 2017). Likewise, another federal court has determined that Plaintiff's at-will status was inconsequential to such a claim:

12

> In the context of at-will employment, "Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship. Thus, an actual contract is not a requirement for recovery."

*Webb v. City of Eufaula*, No. 18-cv-00001-SPS, slip op. at 10 (E.D. Okla. Sept. 28 2018). Thus, it is beyond dispute that such a claim exists regardless of whether a Plaintiff is at-will or not. *Id.*, *Thompson v. Box*, 889 P.2d 1282, 1284, 1994 OK CIV APP 183.

Oklahoma law in the context of a wrongful termination claim is fatal to Hanning. Oklahoma expressly allows a claim of malicious interference in the wrongful termination context. The Oklahoma Supreme Court, in *Pelligrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 536-538, 2003 OK 2, specifically approved of such claim and held that such claims were considered outside the scope of employment. *Id.* at 538-540. In *Wilson v. City of Tulsa*, 91 P.3d 673, 679, 2004 OK CIV APP 44, the Court of Civil Appeals held that an individual supervisor could be liable on a tortious interference claim for acting outside the scope of his employment. *Id.* In *Wilson* the Court held that an employee is outside the scope of his employment if he acts in "bad faith and contrary to the interest of the employer." *Id.* Likewise, the Oklahoma Supreme Court in *Martin v. Johnson*, 975 P.2d 889, 896, 1998 OK 127, carefully surveyed controlling authority, including federal case law and determined that an individual supervisor could be individually liable on a tortious interference claim. *Martin,* 975 P. 2d at 896. An agent can "be held personally liable on an interference with contract claim if the agent was acting against the interests of the principal and in furtherance of interests of the agent." *Id.* The *Martin* court concluded that Plaintiff, a school teacher, could amend her petition to add a cause of action against her principal and superintendent for tortious interference with contract, even though they were agents of the school district that employed her. *Id.*

at 897-898. Obviously, the individuals act contrary to the employer if they are acting unlawfully.

Here, the allegations are that Hanning fired Plaintiff inconsistent with the written policy of the Board and according to his own argument, contrary to what he was allowed to do. He retaliated against Plaintiff unlawfully. Thus, Plaintiff has stated a claim.

## VIII.   PLAINTIFF HAS STATED A BREACH OF CONTRACT CLAIM

In the instant case, Board has alleged that Plaintiff has failed to assert a a breach of contract claim. Board's claim should be denied. Plaintiff has asserted numerous provisions in the handbook to support this claim and indeed the handbook is attached to the FAP.

The existence of an implied contract is generally a question of fact. *Gabler v. Holder and Smith, Inc.,* 11 P.3d 1269, 1275, 2000 OK CIV APP 107, ¶ 24 (citing *Russell v. Board of County Commissioners, Carter County,* 952 P.2d 492); *Tsotaddle v. Absentee Shawnee Housing Authorities,* 20 P.3d 153, 158, 2001 OK CIV APP 23. Here, Defendant argues cases pertaining to an expectation of continued employment rather than certain rights and procedures. Whether a disclaimer exists is not before this court. Further, to disclaim the existence of contractual rights, an employee disclaimer must be clear. *Russell*, 952 P.2d at 502; *Johnson v. Nesca*, 802 P.2d 1294, 1296-97, 1990 OK CIV APP 87.

Normally, the existence of an implied contract is a factual question. *Dupree v. United Parcel Serv., Inc.,* 956 F.2d 219, 222 (10th Cir. 1992) (citing *Williams v. Maremont Corp.,* 875 F.2d 1476, 1481 (10th Cir. 1989)). "If the alleged promises are nothing more than vague assurances, however, the issue can be decided as a matter of law." *Id*. Here, numerous specific promises appear throughout the handbook. Oklahoma case law supports the existence of a contract in these situations. *Parker v. Town of Chelsea,* 263 Fed.Appx. 740, 742 (10th Cir. 2008)

("Mr. Parker is correct that even an at-will employee may have an implied contractual right to certain employment procedures."). Here, Plaintiff has alleged the existence of a contract.

### IX. PLAINTIFF HAS ALLEGED A PROMISSORY ESTOPPEL CLAIM

Plaintiff has alleged promissory estoppel. Promissory estoppel refers to the doctrine that a party may recover on the basis of a promise made when the party's reliance on that promise was reasonable, and the party attempting to recover detrimentally relied on the promise. *Bickerstaff v. Gregston*, 604 P.2d 382, 384, 1979 OK CIV APP 64. In *Cohen v. Cowles Media Co*. 501 US 663, (1991), the U.S. Supreme Court recognized promissory estoppel as a "state law doctrine creating legal obligations never explicitly assumed by the parties that are enforceable." *Id. at 668.* In *Russell* 952 P.2d at 502, the Court outlined the elements of the doctrine of promissory estoppel, noting that "Promissory estoppel is grounded in the *Restatement (Second) of Contracts* § 90, and has been incorporated into Oklahoma common law." *Id*. at 952 P.2d at 502. Section 90 of the *Restatement* states in part:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. . . .

*Id*. at 952 P.2d at 503.

In *Russell,* the Court set forth what the proof that is necessary to establish promissory estoppel: (1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement. *Id*.; *Garst v. Univ. of Oklahoma*, 38 P. 3d 927, 931, 2001 OK CIV APP 144, ¶ 12.  Here, Board has offered an explicit handbook. It now seeks to enforce it only for its benefit. The law is not so. Thus, the motion to dismiss should be denied as to this claim.

## CONCLUSION

WHEREFORE, Plaintiff respectfully submits her response.

 s/ Brendan M. McHugh
Brendan M. McHugh, OBA #18422
P.O. Box 1392
Claremore, OK 74018
(918) 608-0111
Facsimile: (918) 803-4910
E-mail: bmcq1990@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF DELIVERY

I certify that on this 26th day of June 2025, I caused a copy of the above document to be delivered via the Court's ECF delivery system to:

All Counsel of record

s/Brendan M. McHugh