IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY DAWN BURKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 25-CV-174-RAW-GLJ |
| v. ) | |
| ) | |
| (1) JUDY ELLIOTT, individually; ) | |
| (2) JAMES EARL HANNING, individually; ) | |
| (3) WAGONER COUNTY E-911; and ) | |
| (4) BOARD OF COUNTY COMMISSIONERS of ) | |
| WAGONER COUNTY; jointly and severally; ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANT JUDY ELLIOTT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW, Plaintiff, Misty Dawn Burke (Plaintiff), and hereby submits her response to the motion to dismiss filed by Defendant Judy Elliott (Elliott) [Doc. 20]. In support, Plaintiff alleges as follows:

### I.   INTRODUCTION

Plaintiff initially filed this action in State Court on March 6, 2025, and on April 17, 2025, Plaintiff filed a First Amended Petition[1] (FAP) [Doc.2-6]. As to Elliott, Plaintiff's FAP[2] contains the following claims[3]: 42 U.S.C. § 1983 (1983) retaliation; Fair Labor Standards Act, 29 U.S.C.

---

[1] An amended petition supersedes the original and renders it of no effect. *See Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.,* 555 U.S. 438 n. 4 (2009); *Mink v. Suthers*, 482 F. 3d 1244, 1254 (10th Cir. 2007); *Miller v. Glanz,* 948 F. 2d 1562, 1565 (10th Cir. 1991).

[2] Oklahoma refers to the initiating document as a Petition while Federal Courts refer to it as a Complaint. *See* 12 O.S. § 2003 and Fed. R. Civ. P. 3, respectively. Plaintiff will refer to the document as first amended petition or FAP, its name when filed in state court.

[3] Plaintiff's FAP does not assert a Family and Medical Leave Act 29 U.S.C. § 2601 *et. seq.,* (FMLA) claim against Elliott. The generic reference to "all Defendants" at Count III of the FAP does not allege such claim against Elliott. Rather, sub-propositions III(A) and III(B) clarifies

1

§ 203, *et. seq.,*(FLSA) retaliation; and a state claim for malicious interference with a contractual relationship. [Doc. 2-6].

Plaintiff is a former employee of the Board, having been employed with Wagoner County E-911, a public entity controlled by the Board. Elliott was Plaintiff's supervisor; specifically, she was the E-911 Coordinator, having been terminated but amazingly rehired. Defendant Hanning is Chairman of the Board and was either a County Commissioner or chairman of the Board during the events at issue in the FAP.

Elliott asserts that she could not retaliate because she was not a supervisor of Plantiff when terminated. This assertion ignores the allegations of Plaintiff's FAP. Plaintiff specifically alleged that she was retaliated against in March of 2024, the day after the meeting. [Doc. 2-6, ¶¶15-16]. Indeed, direct evidence of retaliation exists because Elliott told Plaintiff that she was being punished for "running her mouth." *Id.* Subsequently, in another incident of retaliation, Plaintiff was fired. The termination occurred shortly after Plaintiff submitted an ORA request seeking communications between Hanning and Elliott, likely exposing unlawful conduct of them.  For the reasons that follow, the motion to dismiss of Elliott should be denied.

**II.     STANDARD OF REVIEW ON A MOTION TO DISMISS**

In this case, Elliott is seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Under this standard, dismissal is proper only if "viewing the well-pleaded factual allegations in the [FAP] as true and in the light most favorable to the non-moving party, the [FAP] does not contain enough facts to state a claim to relief that is plausible on its face." *Anderson v. Suiters*, 499 F.3d 1228-1232 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). The allegations need only "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,*

---

what defendants these claims are aimed at. Hanning and Burke's employer, Board. E-911 has been dismissed. Plaintiff, therefore, will not address the FMLA claims as to Defendant Elliott.

556 U.S. 662, 678 (2009). Under Fed. R. Civ. P. 8(a)(2), a Plaintiff is merely required to state a short and plain statement of the facts entitling her to relief. *Id.* Plaintiff has done this and as such, the motion to dismiss should be denied.

### III.  PLAINTIFF'S FAP STATES A FIRST AMENDMENT RETALIATION CLAIM AS TO ELLIOTT

Plaintiff has asserted, *inter alia,* 1983 claims predicated on violations of her rights under the U.S. Constitution. 1983 provides redress for constitutional violations. *Id.* Here, Plaintiff has alleged First Amendment retaliation. "An act in retaliation for the exercise of a constitutionally protected right is actionable under …. 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner* 899 F. 2d 940, 948 (10th Cir. 1990). When analyzing a First Amendment claim under 1983, courts utilize the *Pickering/Connick* test based on the seminal cases of *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) and *Connick v. Meyers,* 461 U.S. 138 (1983) and subsequently qualified in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  In *Garcetti*, the Supreme Court qualified the *Pickering/Connick* test to hold that the speech at issue cannot be part of the employer's official job duties, or else it is unprotected.  Here, the speech was not part of Plaintiff's job duties. Neither submitting an HR complaint nor submitting an ORA request are within Plaintiff's job duties.

A public employer "can not retaliate against an employee for exercising her constitutionally protected right of free speech." *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  A matter is a public concern and hence constitutionally protected if it is a matter "of interest to the community, whether for social, political or other reasons…" *Dill*, 155 F.3d at 1202. If the speech relates "to any matter of public, social or other concern to the community also it is protected speech. *McFall v. Bednar,* 47 F.3d 1081, 1089 (10th Cir. 2005). The Supreme Court has

3

recognized that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental [efforts] that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972).

To determine if the speech is protected, the courts look to five elements: (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Id.* To prevail, a plaintiff must ultimately establish all five elements. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007).

Plaintiff was speaking not as an employee. Elliott argues that her speech was pursuant to her duties because but for her job there would be no speech. But this is not the test otherwise an public employee would almost never have a claim. Elliott construes the test far mare broader than case law. "If the employee speaks pursuant to [her] official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1235 (10th Cir. 2009). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Frank,* 573 U.S. 228, 240-241 (2014). If the speech involves "the type of activities that [the employee] was paid to do," then it falls within the

4

scope of an employee's duties. *Green v. Bd. of Cty. Comm'rs,* 472 F.3d 794, 800-01 (10th Cir. 2007).

"The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. If the speech involves "the type of activities that [the employee] was paid to do," then it falls within the scope of an employee's duties. *Green v. Bd. of Cty. Comm'rs,* 472 F.3d 794, 800-01 (10th Cir. 2007). Here, the speech was not within Plaintiff's job duties as making an HR complaint against a superior is not a job duty of a 911 dispatcher. Neither is sending an ORA request.

Elliott also asserts that the speech was not a matter of public concern. A matter is a public concern and hence constitutionally protected if it is a matter "of interest to the community, whether for social, political or other reasons…" *Dill*, 155 F.3d at 1202. If the speech relates "to any matter of public, social or other concern to the community also it is protected speech. *McFall* 47 F.3d at 1089. Stated another way, Elliott asserts that HR complaints regarding failure to pay overtime and a hiostile work environment by a taxpayer funded entity is not a matter of public concern. The use of taxpayers funds and compliance with the law is unquestionably a matter of public concern. *Id.* Similarly, Elliott asserts that her ORA requests are not matters of public concern. This too is misplaced. The ORA expressly allows for a public interest in requesting documents. Further, the request sought communications made in executive session and concerned public officials likely not complying with County policy and the law. Therefore, the speech was of public concern.

Elliott also argues that she took no adverse actions against Plaintiff. However, Plaintiff has alleged that Elliott terminated her or at least conspired in her termination. She additionally,

asserted that she was punished the very next day after her complaint for "running her mouth." An adverse action is one that would "chill a person of ordinary firmness from continuing to engage in that activity." *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000). Here, Plaintiff has alleged adverse action and Elliott's argument is misplaced.

### III.    PLAINTIFF HAS STATED AN FLSA RETALIATION CLAIM

Plaintiff has made an FLSA claim against Elliott. First, individual liability is allowed under the 10th Circuit case law. *Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Reg.*, 125 F.4th 1321, 1341 (10th Cir. 2025). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Dixon* 125 F. 4th at 1341 (quoting FLSA§ 203(d)). The *Dixon* court reiterated that FLSA individual liability is allowed under the FLSA. *Id.* (citing *Hodgson v. Okada*, 472 F.2d 965, 968-69 (10th Cir. 1973)). The courts use the economic reality test to determine whether there is an employee-employer relationship. *Dixon* 125 F. 4th at 1341-1342 (citing *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018)).

> Under the economic reality test Courts analyze:
>
> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Acosta*, 905 F.3d at 1160. Under this test, no single factor is determinative and courts look to see if the person has the right to control the employee, whether they were working directly or indirectly for the employer and whether the individual had power to control the employee. *Graziadio v. Culinary Inst. of Am.,* 817 F.3d 415, 422-423 (2nd Cir. 2016). Here, the allegations

6

are that Elliott was her supervisor the next day after the HR complaint and also contributed to her termination.

Plaintiff has alleged a retaliation claim under the FLSA. The FLSA has a strong anti-retaliation provision. 29 U.S.C. § 215. The anti-retaliation provision provides:

> It shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee,"

*Id.* 215(a)(3).

The Tenth Circuit has held that even the informal and unofficial assertion of rights is still protected under the FLSA. *McKenzie v. Renberg's, Inc*., 94 F.3d 1478, 1486 (10th Cir. 1996); *Love v. Re/Max of Am., Inc*., 738 F.2d 383, 387 (10th Cir. 1984)( holding that the "unofficial assertion of rights through complaints at work" is protected activity under the FLSA). A Plaintiff must allege 1) he or she engaged in an activity protected by the FLSA; 2) that he or she suffered adverse action by the employer after or contemporaneously with such activity and 3) a causal connection existed between the employees' activity and employer's adverse action. *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390, 1394 (10th Cir. 1997).

Here, Plaintiff has alleged that Hanning was Chairman of the Board and was a decision maker in her termination. [Doc. 2-6]. Movants attempt to counter these allegations by ignoring them and assert that Hanning is not allowed to terminate Plaintiff under the policy. But this ignores the allegations. Plaintiff's complaint that she made against Judy Elliott was protected under the FLSA as was her request for evidence regarding her complaint by asking for the Hanning/Elliott messages. Further, Clerk Lori Hendricks admitted that the request was forwarded to the Commissioners and also that she would follow-up with the request. Plaintiff was fired. These allegations are sufficient.

Movants are incorrect about the last date of protected conduct. The last protected conduct was not March of 2024, when Plaintiff made her complaint, rather when she submitted her ORA requests seeking the communications between Hanning and Elliott. This occurred in December of 2024. The employment status of Plaintiff was decided at the January 21, 2025 special meeting. "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1228 (10th Cir. 2006). Moreover, the Tenth Circuit has explained that "a pattern of retaliatory conduct [that] begins soon after the [protected activity] and only culminates later in actual discharge" may sometimes preclude summary judgment notwithstanding the absence of close temporal proximity between the protected activity and the employer's ultimate decision to terminate the employee. *Marx v. Schnuck Mkts., Inc*., 76 F.3d 324, 329 (10th Cir. 1996); *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1204 (10th Cir. 2008). Notably, the motion to dismiss standard is less onerous than a summary judgment standard. Therefore, the motion to dismiss the FLSA claims should be denied in all respects.

### IV.　A CLAIM FOR MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AS TO HANNING EXISTS

Plaintiff has alleged a claim against Elliott for malicious interference with a contractual relationship. Elliott argues that Plaintiff's claim for malicious interference with a contractual relationship should be dismissed. Elliott's assertions are misplaced as Oklahoma law is clear, such a claim exits. *Fulton v. People Lease Corp*., 241 P.3d 255, 263-264, 2010 OK CIV APP 84.

To establish a claim for interference with contract, the Plaintiff must demonstrate the following:

    1.　That she had a business or contractual right that was interfered with.

    2.    That the interference was malicious and wrongful, and that such interference was neither justified, privileged, nor excusable.

    3.    That damage was approximately sustained as a result of the interference.

*Mac Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 425, 428; 1979 OK 41; *Navistar Intern. Transp. Corp. v. Vernon Klein Truck and Equipment,* 919 P.2d 443, 446, 1994 OK CIV APP 16; *Dill v. City of Edmond,* 155 F.3d 1193, 1207-08 (10th Cir. 1998). In the absence of a contractual relationship, Plaintiff "must show either the prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 529 P.2d 987, 990, 1974 OK 34. Here, Plaintiff has alleged this.

To the extent that Elliott asserts that a contract is required, case law disagrees. Numerous federal courts have already ruled, consistent with Oklahoma law, that a contract is not required. In *Cooper v. Northwest Rogers Cty. Fire Prot. Dist.,* (N.D. Okla., 2017), Judge Eagan, citing Oklahoma law and numerous federal cases, explicitly held that a contract is not required:

> "The Court will follow the Oklahoma Court of Civil Appeals and find that an at-will employment relationship can form the basis for a claim of malicious interference with a contractual relationship…."

*Cooper v. Northwest Rogers Cty. Fire Prot. Dist.*, No. 17-CV-00320-CVE-FHM, slip op. at 9-10 (N.D. Okla. Aug. 28 2017). Likewise, another federal court has determined that Plaintiff's at-will status was inconsequential to such a claim:

> In the context of at-will employment, "Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship. Thus, an actual contract is not a requirement for recovery."

*Webb v. City of Eufaula*, No. 18-cv-00001-SPS, slip op. at 10 (E.D. Okla. Sept. 28

2018). Thus, it is beyond dispute that such a claim exists regardless of whether a Plaintiff is at-will or not. *Id.*, *Thompson v. Box*, 889 P.2d 1282, 1284, 1994 OK CIV APP 183.

Oklahoma law in the context of a wrongful termination claim debunsk Elliott's assertions as well. Oklahoma expressly allows a claim of malicious interference in the wrongful termination context. The Oklahoma Supreme Court, in *Pelligrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 536-538, 2003 OK 2, specifically approved of such claim and held that such claims were considered outside the scope of employment. *Id.* at 538-540. In *Wilson v. City of Tulsa*, 91 P.3d 673, 679, 2004 OK CIV APP 44, the Court of Civil Appeals held that an individual supervisor could be liable on a tortious interference claim for acting outside the scope of his employment. *Id.* In *Wilson* the Court held that an employee is outside the scope of his employment if he acts in "bad faith and contrary to the interest of the employer." *Id.* Likewise, the Oklahoma Supreme Court in *Martin v. Johnson*, 975 P.2d 889, 896, 1998 OK 127, carefully surveyed controlling authority, including federal case law and determined that an individual supervisor could be individually liable on a tortious interference claim. *Martin,* 975 P. 2d at 896. An agent can "be held personally liable on an interference with contract claim if the agent was acting against the interests of the principal and in furtherance of interests of the agent." *Id.* The *Martin* court concluded that Plaintiff, a school teacher, could amend her petition to add a cause of action against her principal and superintendent for tortious interference with contract, even though they were agents of the school district that employed her. *Id.* at 897-898. Obviously, the individuals act contrary to the employer if they are acting unlawfully.

Here, the allegations are that Elliott interfered with Plaintiff's employment by retaliating against her and causing her to be fired. Thus, Plaintiff has stated a claim.

## CONCLUSION

WHEREFORE, Plaintiff respectfully submits her response.

 s/ Brendan M. McHugh
Brendan M. McHugh, OBA #18422
P.O. Box 1392
Claremore, OK 74018
(918) 608-0111
Facsimile: (918) 803-4910
E-mail: bmcq1990@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF DELIVERY

I certify that on this 27th day of June 2025, I caused a copy of the above document to be delivered via the Court's ECF delivery system to:

All Counsel of record

s/Brendan M. McHugh