## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISTY DAWN BURKE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-174-RAW-GLJ** |
| | ) | |
| JUDY ELLIOTT, Individually and in | ) | |
| her Official Capacity, | ) | |
| JAMES EARL HANNING, | ) | |
| Individually and in his Official | ) | |
| Capacity; WAGONER COUNTY | ) | |
| BOARD OF COUNTY | ) | |
| COMMISSIONERS, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Misty Dawn Burke filed this action against Defendants July Elliott, individually and in her official capacity; James Earl Hanning, individually and in his official capacity; and the Wagoner County Board of County Commissioners ("Board").[1] This matter comes before the Court on motions to dismiss by all remaining Defendants. For the reasons set forth below, the Court finds that the Defendants' Hanning, Wagoner County E-911 and Board of County Commissioners of Wagoner County's Motion to Dismiss and Brief in Support [Docket No. 19] should be GRANTED IN PART and DENIED IN PART and the Motion to Dismiss of Defendant Judy Elliott and Brief in Support [Docket No. 20] should be GRANTED.

---

[1] Defendant Wagoner County E-911 was previously dismissed. *See* Docket No. 22.

# I.    PROCEDURAL HISTORY

Plaintiff filed this case in state court in Wagoner County, Oklahoma on March 6, 2025, Case No. CJ-2025-104.  As relevant, the original state court petition named the Board and Wagoner County E-911, as well as Judy Elliott and James Hanning in their individual capacities only.  Docket No. 2, Ex. 2.  Plaintiff filed an amended state court Petition on April 17, 2025, which names the entities as well as Elliott and Hanning in their individual and official capacities.  *Id.*, Ex. 6.  On May 23, 2025, all Defendants removed the case to this Court.  Docket Nos. 1-2.

Plaintiff's First Amended Petition enumerates seven causes of action but actually incorporates nine.[2]  Because Plaintiff previously dismissed Defendant Wagoner County E-911, the following eight causes of action remain:   (1) 42 U.S.C. § 1983 claim for retaliation in violation of the First Amendment, as to Elliott and Hanning; (2) failing to pay unpaid wages and overtime in violation of the Fair Labor Standards Act ("FLSA"), as to the Board; (3) retaliation in violation of the FLSA, as to Elliott, Hanning, and the Board; (4) interference in violation of the Family and Medical Leave Act ("FMLA"), as to Hanning and the Board; (5) retaliation in violation of the FMLA, as to Hanning and the Board; (6) breach of contract as to the Board; (7) promissory estoppel, as to the Board; and

---

[2] "At minimum, [R]ule 8(a) requires a comprehensible, short and plain statement of the claim(s) sufficient to give the opposing party reasonable and fair notice of the basis of the complaint." *Abdelsamed v. Colorado*, 6 Fed. Appx. 771, 772 (10th Cir. 2001). Although the undersigned Magistrate Judge proceeds on the substance, Counsel is cautioned that, "as a structural matter, the . . . Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.'"  *Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010). This improper format, which is repeated in Claims II and III, is improper under Rule 8 of the Federal Rules of Civil Procedure.

(8) malicious interference with a contractual relationship, as to Elliott and Hanning. Docket No. 2, Ex. 6, pp. 9-19.

Despite the heading on the First Amended Petition, Plaintiff appears to allege claims against Elliott and Hanning only in their individual capacities. The undersigned Magistrate Judge notes that counsel entered appearances on behalf of Elliott and Hanning in their individual *and* official capacities. Docket Nos. 6-10. On June 4, 2025, however, Plaintiff's Demand for Jury Trial, Docket No. 16, identified Elliott and Hanning in their individual capacities only, and continued to do so in all subsequent pleadings. Defendant Hanning followed suit, *see, e.g.*, Docket No. 19, while Defendant Elliott followed the proper heading, *see*, *e.g.*, Docket No. 20. Given Plaintiff makes no claims or arguments related to Elliott or Hanning in their official capacities, the undersigned Magistrate Judge first recommends that any claims against them in their official capacities should be dismissed as moot.

## II.    LAW APPLICABLE

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 555); *see generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "'whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678 (quotations omitted).

## III.    FACTUAL BACKGROUND

Plaintiff's First Amended Petition alleges a series of events surrounding her employment at E-911 in Wagoner County, Oklahoma, from March 2024 leading up to her employment termination on January 21, 2025. In general, Plaintiff alleges that she and others submitted grievances to Human Resources regarding Elliott's behavior, including allegations of a hostile work environment related to violations of the FLSA and FMLA. Elliott was informed of the complaints at a March 11, 2024, Board meeting, and Hanning allegedly texted Elliott the names of at least some of the people who made complaints. Plaintiff alleges Elliott's conduct toward employees after she learned of these complaints

4

led to an emergency session of the Board on March 12, 2024, at which time Elliott was placed on administrative leave and Plaintiff was promoted to Interim Coordinator.  Docket No 2, Ex. 6, pp. 2-7, ¶¶ 6-21.

Plaintiff next alleges that she needed major spine surgery in June 2024, and requested FMLA leave for her surgery, hospitalization, and several weeks after for recovery time.  Plaintiff's FMLA leave was approved by the Board Chairman, but Hanning contacted her while she was on FMLA leave and during a Board meeting, placing her on speakerphone, to demand answers regarding the plan and approval process for Plaintiff's leave.  Additionally, he asked her to submit correspondence regarding the FMLA approval.  *Id.*, pp. 7-8, ¶¶ 22-23.

In December 2024, Plaintiff submitted two separate Open Records Act ("ORA") requests for correspondence, and Plaintiff attaches the two requests to her First Amended Petition.  *Id.*, p. 8, ¶ 24 & pp. 45-47.  Plaintiff requested: (i) emails and text messages between District Attorney Jack Thorp and any county commissioner from July 22, 2024, through November 15, 2024, as well as (ii) emails and text messages between Hanning and Elliott on March 12, 2024.  *Id.*, pp. 45-47.

On January 21, 2025, Plaintiff was fired following a Board meeting wherein her employment was discussed and terminated.  Plaintiff alleges that, during the executive session for this meeting, Hanning said that Plaintiff used her position for special treatment.  *Id.*, p. 8, ¶ 26.  Plaintiff further alleges, however, that Hanning himself has used his position for special treatment, including asking Thorp to bury "numerous acts of criminal conduct," and "using his position to have criminal charges filed against individuals that he has a

motive or agenda against, using his position of power for special treatment." *Id.*, pp. 8-9, ¶ 26.

## IV.    ANALYSIS

Defendants Elliott, Hanning, and Board contend that they are entitled to dismissal of all causes of action in this case.  The undersigned Magistrate Judge makes the following findings as to each claim for relief against each Defendant.

### A.    First Amendment Retaliation Pursuant to § 1983 (Elliott and Hanning).

*a.    First Amendment Retaliation Allegations and Applicable Law.*

Plaintiff alleges that Elliott was Plaintiff's immediate supervisor and E-911 director, and that Plaintiff worked for E-911, a public entity operated by the Board of County Commissioners of Wagoner County.  Hanning was a County Commissioner and Chairman of the Board at the time of her termination.  Docket No. 2, Ex. 6, pp.1-2, ¶¶ 1, 3-6.  Plaintiff alleges she engaged in protected speech when she submitted a grievance regarding Elliott, in which she alleged Elliott created a hostile work environment.  Plaintiff does not allege the contents of the grievance submitted, nor the date on which she submitted it.  The First Amended Petition notes, however, that, following the submission of a number of grievances regarding Elliott, the Board discussed Elliott's conduct at its March 11, 2024, meeting while in executive session.  Furthermore, the Board called an emergency meeting on March 12, 2024, upon reports of further misconduct by Elliott.  Elliott was placed on administrative leave that day, and Plaintiff was placed in the role of Interim Coordinator for Wagoner County E-911 on March 13, 2024.  There are no allegations that Elliott ever returned to a position at E-911 after being placed on administrative leave.  Plaintiff also

alleges she engaged in protected speech when she submitted ORA requests in December 2024 for text messages/emails between Hanning and Elliott on March 12, 2024. *Id.*, pp. 2-7, ¶¶ 7-21 & p, 8, ¶ 24.

Plaintiff alleges that Hanning texted Elliott on March 11, 2024, to share the names of individuals who filed grievances against Elliott, information he learned during an executive session of the Board. *Id.*, p. 5, ¶ 14. Furthermore, at the January 21, 2025 executive session that resulted in Plaintiff being fired, Hanning alleged that Plaintiff used her position for special treatment. *Id.*, p. 8, ¶ 26.

Plaintiff's First Amended Petition alleges that "Hanning and Elliott violated Plaintiff's First Amendment rights, first by creating a hostile work environment then by terminating her. Indeed, Hanning is the individual who recommended termination. Hanning did so in conspiracy with [Elliott], her husband Sheriff Chris Elliott, and DA Jack Thorp." Docket No. 2, Ex. 6, p. 9, ¶ 28. Parsing the combined allegations against Elliott and Hanning, Plaintiff alleges that Elliott created a hostile work environment, was placed on administrative leave, then conspired with Hanning to ultimately terminate Plaintiff's employment.

"To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law." *Kvech v. New Mexico Dept. of Public Safety*, 987 F. Supp. 2d 1162, 1186 (D. N.M. 2013) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (same). Thus, "the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some

capacity, whether they act in accordance with their authority or misuse it.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)); *see also American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]") (internal citations and quotations omitted).    The Supreme Court has established several tests for analyzing the state actor requirement to include the public function,[3] state compulsion,[4] nexus,[5] and joint action[6] tests.  None of these appear applicable here based on the face of the Complaint.  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 938-939 (1982) (compiling cases).  Plaintiff's First Amended Complaint merely alleges that "the conduct at issue herein was taken under color of law."  Docket No. 2, Ex. 6, p. 10, ¶ 31.  This sufficiently applies to Hanning, who was Chairman of the Board in January 2025 and an alleged decisionmaker in Plaintiff's termination.    The First Amended Petition contains no allegation, however, as to how Elliott was acting directly

---

[3] Pursuant to the public function test, a party is deemed a state actor "[i]f the state delegates to a private party a function traditionally exclusively reserved to the State."  *Gallagher*, 49 F.3d at 1456.

[4] The state compulsion test "asks whether the challenged activity was the result of the State's exercise of coercive power or the State's significant encouragement."  *Vargas v. Frietze*, 2003 WL 27385444, at *5 (D.N.M. Mar. 31, 2003) (citing *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

[5] "Under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'"  *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

[6] "Under the joint action test, 'courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'"  *Janny v. Gamez*, 8 F.4th 883, 918-919 (10th Cir. 2021) (quoting *Gallagher*, 49 F.3d at 1453)).

under color of law after she had been placed on administrative leave, and the conclusory allegation of a conspiracy with Hanning and her husband, Sheriff Chris Elliott, is insufficient to overcome that hurdle. *Olson v. Carmack*, 641 Fed. Appx. 822, 827 (10th Cir. 2016) ("Here, the amended complaint contains no allegations that any of the Neighbors was acting directly under color of law. And although this color-of-state-law requirement can be established by allegations that a private actor conspired with a state actor the amended complaint is devoid of any factual allegations, as opposed to unsupported conclusions, that the Neighbors reached an agreement with a state actor to violate Mr. Olson's constitutional rights.") (citing *Dennis v. Sparks,* 449 U.S. 24, 29 (1980)); *see also Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994) ("'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'") (quoting *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir. 1989)). Even accepting as true that there was a conspiracy among Elliott, her husband, and Hanning, the First Amended Petition fails to state a federal claim of state action against Elliott for First Amendment retaliation.

Where a public employer is the same entity or individual alleged to have taken the adverse action against the employee, claims are evaluated under the *Garcetti/Pickering*[7] test, "[t]o achieve the required balance between the interests of public employees in commenting on matters of public concern and the interests of government employers in performing efficiently." *Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cty. Oklahoma*, 896 F.3d 1176, 1181 (10th Cir. 2018). Using that test, the Court asks:

(1) whether the speech was made pursuant to an employee's official duties;

---

[7] *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Board of Education*, 391 U.S. 563 (1968).

(2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)).  This is the appropriate test for Hanning.

However, a different test applies "for assessing First Amendment claims against a defendant who is neither an employer nor a party to a contract with the plaintiff."  *Worrell v. Henry*, 219 F.3d 1197, 1213 (10th Cir. 2000); *see also Couch v. Bd. Of Trustees of Memorial Hosp. of Carbon County,* 587 F.3d 1223, 1237 (10th Cir. 2009) (citing *Worrell*, *id.* at 1212, as applying "in First Amendment retaliation claims against defendants other than the plaintiff's employers.").  Where a Defendant was not Plaintiff's employer at the time of the adverse employment action, and there is no contractual relationship between them, the Tenth Circuit requires:

[P]roof of the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell*, 219 F.3d at 1212 (quotations omitted); *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022) (same); *see also Leverington v. City of Colorado Springs*, 643 F.3d 719, 729 (10th Cir. 2011) ("Here, Officer Peters is not Ms. Leverington's employer, and there is no contractual relationship between them. Accordingly, *Worrell* applies to Ms. Leverington's cause of action against Peters.").  The *Worrell* test thus applies to Elliott.

10

b.    *Elliott.*

Even assuming *arguendo* that Plaintiff sufficiently alleges state action, Plaintiff's claim for First Amendment retaliation fails to state a claim under the *Worrell* test. Plaintiff alleges she suffered an adverse employment action "because of her protected speech in that she was terminated and that a significant motivating factor was expression of her political speech and as such termination of Plaintiff is in contravention of her First Amendment rights[.]" Docket No. 2, Ex. 6, pp. 9-10, ¶ 30. The alleged adverse employment action arose, then, when Elliott was neither a supervisor nor final decisionmaker at the time of her termination. Although Plaintiff and Elliott apply the *Garcetti/Pickering* test in their briefing, the undersigned Magistrate Judge applies the *Worrell* test, as noted above, as Elliott could no longer be considered an employer or in a contractual relationship with Plaintiff. In assessing these elements, the undersigned Magistrate Judge notes that "reliance on speculations and conclusory allegations is futile in pleading a plausible retaliation claim." *VDARE Found. v. City of Colorado Springs*, 449 F. Supp. 3d 1032, 1050 (D. Colo. 2020), *affirmed*, 11 F.4th 1151 (10th Cir. 2021).

The Tenth Circuit has stated that addressing the first *Worrell* prong—the Plaintiff engaging in constitutionally-protected activity—is generally determined by the second prong in the *Garcetti/Pickering* test as to whether a government employee's speech is protected because it is a matter of public concern. *Leverington*, 643 F.3d at 733 (citing *Dixon v. Kirkpatrick,* 553 F.3d 1294, 1303-1304 (10th Cir. 2009) (applying public-concern test to determine whether a government employee's speech is "constitutionally protected"); *Brammer–Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1203 (10th Cir. 2007)

11

("If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends."), *abrogated on other grounds in Timmons v. Plotkin*, _ F.4th _, 2025 WL 3059811, at *5 (10th Cir. Nov. 3, 2025); *Worrell,* 219 F.3d at 1205 (stating, in applying *Pickering* test, that "only matters of public concern . . . are protected by the First Amendment in this context"). "Matters of public concern are those of interest to the community, whether for social, political, or other reasons." *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012) (quoting *Leverington*, 643 F.3d at 727). "Courts construe 'public concern' very narrowly." *Butler v. Bd. of Cnty. Comm'rs*, 920 F.3d 651, 656 (10th Cir. 2019) (quoting *Leverington*, 643 F.3d at 727). This is a legal question that the Court is required to resolve. *See Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). "In deciding what is a matter of public concern, we are required to consider 'the content, form, and context of a given statement, as revealed by the whole record.'" *Brammer-Hoelter*, 492 F.3d at 1205 (quoting *Connick v. Myers,* 461 U.S. 138, 147-148, (1983)); *see also Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) ("[T]he test quite properly applies to claims brought by government employees—but its scope reaches no further.").

The Tenth Circuit has "held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration." *Brammer-Hoelter*, 492 F.3d at 1205 (citing *Hom v. Squire,* 81 F.3d 969, 974 (10th Cir. 1996); *Lancaster v. Indep. Sch. Dist. No. 5,* 149 F.3d 1228, 1233-1234 (10th Cir. 1998); & *McEvoy v. Shoemaker,* 882 F.2d 463, 466 (10th Cir. 1989)). "'[S]peech relating to internal personnel disputes and working conditions

ordinarily will not be viewed as addressing matters of public concern.'" *Morris*, 666 F.3d at 661 (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)). However, "'[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [state] officials, in terms of content, clearly concerns matters of public import.'" *Hulen*, 322 F.3d at 1237 (quoting *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (alteration in original)). Additionally, "a public concern usually exists when the speech exposes racial discrimination, harassment, or corruption in a public workplace." *Rogers v. Riggs*, 71 F.4th 1256, 1260 (10th Cir. 2023) (citing *Connick*, 461 U.S. at 148 n.8 (racial discrimination); *Wulf v. City of Wichita*, 883 F.2d 842, 860 (10th Cir. 1989) (harassment); *Conaway*, 853 F.2d at 796 (corruption)).

Elliott contends that Plaintiff's grievances were not a matter of public concern because they were about Elliott's behavior as a supervisor, and thus in the realm of workplace frustrations. Plaintiff alleges in the First Amended Complaint that the written complaints regarding Elliott filed by Plaintiff and others regarded allegations that she created a hostile work environment, but likewise included allegations that she was violating the FLSA and FMLA. Plaintiff therefore asserts that her grievances are matters of public concern regarding use of taxpayer funds as to overtime pay and compliance with the law regarding a potential hostile work environment by a taxpayer-funded entity. The undersigned Magistrate Judge agrees with Plaintiff that at least some of her claims are matters of public concern because they go to allegations of alleged official impropriety. *See Brammer-Hoelter*, 492 F.3d at 1205 ("Statements revealing official impropriety usually involve matters of public concern."). Specifically, Plaintiff's allegations regarding

13

alleged violations of FMLA and FLSA are sufficient allegations of matters of public concern at this stage of the case.

Turning to the second element, the undersigned Magistrate Judge considers whether Elliott's actions "caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Worrell*, 219 F.3d at 1212. "[O]ur standard for evaluating that chilling effect on speech is objective, rather than subjective[.]" *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quotation omitted). The First Amended Petition asserts that Plaintiff and others complained of Elliott's behavior in March 2024, at which time Elliott was placed on administrative leave. Plaintiff submitted ORA records request in December 2024, the relevant one here being for emails and text messages between Hanning and Elliott on March 12, 2024, alone.[8] Plaintiff alleges she was fired on January 21, 2025, asserting that Hanning used his position as a Wagoner County Commissioner to accomplish this. *See* Docket No. 2, Ex. 6, p. 8, ¶¶ 24-26. As noted above, however, there is no allegation that Elliott was an employee or supervisor of Plaintiff at the time Plaintiff was fired. In Count 1, then, Plaintiff alleges that Hanning and Elliott conspired, along with Elliott's husband and a district attorney, to accomplish her employment termination. Based on the First Amended Petition, Plaintiff's protected speech in March 2024 resulted in Elliott being placed on administrative leave. Plaintiff alleges no facts regarding Elliott's actions other

---

[8] Although the First Amended Petition makes no effort to clarify what the ORA requests entailed or why they were relevant, the attached requests themselves indicate the parties involved and the scope of each ORA request by date and content, *i.e.*, text messages and emails.

than a conclusory accusation of conspiracy to have her employment terminated. Plaintiff makes no allegation that Elliott interfered with her ability to speak freely, nor that Elliott's actions would have chilled a person of ordinary firmness. *See Rees v. Dahl*, 24 Fed. Appx. 907, 911 (10th Cir. 2001) ("He does not allege that Defendants attempted to interfere with his ability to speak freely, or that he refrained from engaging in protected speech after Defendants filed their replevin action. These circumstances, without an explicit allegation that a person of ordinary firmness would have been chilled by Defendants' actions, are insufficient to satisfy *Worrell*'s objective chilling standard[.]") (citing *Smith v. Plati,* 258 F.3d 1167, 1177 (10th Cir. 2001) (upholding a motion to dismiss a § 1983 plaintiff's First Amendment retaliation claim under *Worrell* because defendants did not, nor did they have the power to, interfere with plaintiff's actual First Amendment activity, and because plaintiff persisted in speaking out despite the defendants' alleged retaliatory acts). Moreover, Plaintiff fails to allege that Elliott took an adverse action as to Plaintiff, much less that such action was "substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at 1212. For these reasons, the undersigned Magistrate Judge finds Plaintiff fails to state a First Amendment retaliation claim as to Elliott.

### c. *Hanning*

As with Elliott, Hanning alone was not Plaintiff's employer. Hanning served as a Wagoner County Commissioner and Chairman on the Board of County Commissioners of the County of Wagoner County, and Plaintiff alleges that E-911 and the Board are her employers. Docket No. 2, Ex. 6, pp. 1, 10, ¶¶ 2, 36. Plaintiff nevertheless files this claim

against Hanning alone, and not the Board.    Hanning acknowledges both the *Garcetti/Pickering* test and the *Worrell* test in his briefing and seems to apply *Garcetti/Pickering* while simultaneously arguing that Hanning himself was not Plaintiff's employer.    Plaintiff applies the *Garcetti/Pickering* test, without addressing the identity of Plaintiff's employer, instead asserting that, "[j]ust because Hanning is prohibited from acting unilaterally does not mean that he didn't."    Docket No. 23, p. 4.

The Tenth Circuit has upheld the concept of individual liability in a First Amendment retaliation case, as have other Circuits.    Under Tenth Circuit precedent, while Hanning alone did not make the final decision to terminate Plaintiff's employment, he may be liable if he possessed a retaliatory motive that set in motion the events that ultimately led to her termination.    *Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) ("While Segura made the final decision to transfer Plaintiffs, Pratt, though a subordinate, might be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to Plaintiffs' transfers."); *see also Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018) ("If an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker.").

The undersigned Magistrate Judge applies here the more stringent *Garcetti/Pickering* employee test.    *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1250 (10th Cir. 2024) ("Without deciding Plaintiff's status, we apply the more stringent [*Garcetti/Pickering*] employee test as Defendants urge.    As noted above, a court

considering a First Amendment retaliation claim in the employee context must balance five factors:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Bailey*, 896 F.3d at 1181. "*In general*, the first three prongs are legal issues to be decided by the court and the last two prongs are factual issues left to the factfinder." *Id*. (emphasis added).

Taking each prong in turn, *Garcetti* explains that, under the first prong, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The Supreme Court has more recently clarified that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014); *accord Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529 (2022) (recognizing that *Lane* held that "the fact the speech touched on matters related to public employment was not enough to render it government speech"). Plaintiff does not allege what position she was originally hired for at E-911, but alleges she was made Interim Coordinator on March 13, 2024. Docket No. 2, Ex. 6, pp. 1-2, 7, ¶¶ 1, 6, 21. *See Brown v. Smith*, 2012 WL 1085498, at *3 (N.D. Okla. Mar. 29, 2012) ("This is not the type of well-pleaded allegation that must be accepted as

true when ruling on a motion to dismiss. By itself, plaintiff's failure to provide some indication of her job duties is a pleading deficiency."). Plaintiff contends in her Response Brief that complaints regarding violations of the FLSA and FMLA do not fall within Plaintiff's official duties, and Defendants do not challenge this argument. Plaintiff's Response brief only addresses the first prong.

As discussed more fully above, the undersigned Magistrate Judge finds, despite Plaintiff's lack of discussion on this subject, that at least some of her claims are matters of public concern because they go to allegations of alleged official impropriety. *See Brammer-Hoelter*, 492 F.3d at 1205 ("Statements revealing official impropriety usually involve matters of public concern."). Specifically, Plaintiff's allegations regarding alleged violations of FMLA and FLSA are sufficient allegations of matters of public concern at this stage of the case. *See, e. g.*, *Hawkins v. Bd. of Cnty. Commissioners of Coffey Cnty. Kansas*, 376 F. Supp. 3d 1200, 1213 (D. Kan. 2019) ("[A]ccepting plaintiff's allegations as true, one could plausibly conclude that the second statement involved a matter of public concern, namely that plaintiff intended the speech to inform the public of potential wrongdoing or impropriety with respect to County practices regarding the treatment of employees who are subject to personnel decisions of elected officials."). *But see Brammer-Hoelter*, 492 F.3d at 1206 (stating that a reference to a supervisor's favoritism is "clearly" not a matter of public concern).

The third prong – whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests – largely requires a sufficient factual basis lacking at this stage of the proceedings.

The undersigned Magistrate Judge notes that the First Amended Petition does not address this prong even in conclusory fashion, nor do the parties address it in the briefing.  *See Iwasko v. Santa Fe Cmty. Coll.*, 2011 WL 13284601, at *8 (D.N.M. Sept. 2, 2011) ("At this point, Defendants have had no opportunity to present evidence concerning their interest in regulating the speech at issue.  Neither has the plaintiff set forth any allegations relevant to this prong beyond her assertion of her First Amendment interest in free speech."). Because Plaintiff's claim nevertheless fails at the fourth prong as discussed below, the undersigned Magistrate Judge finds that a failure to engage with this prong does not save the claim.  *See id.* ("[I]t is unimportant that the Court cannot fully engage with this factor. As explained below, even if Ms. Iwasko has met her burden on this issue, her claim ultimately fails at the fourth step of the *Garcetti/Pickering* inquiry.").

"Under the fourth-prong of *Garcetti,* plaintiffs bear the burden of establishing both a detrimental employment decision (adverse employment action) and 'causation—that is, that the constitutionally protected speech was a substantial motivating factor in the employer's decision to adversely alter the employee's conditions of employment.'" *Couch*, 587 F.3d at 1236 2009) (quoting *Maestas,* 416 F.3d at 1188 & n. 5).  Plaintiff alleges she was terminated in retaliation for protected speech, and that such speech was a significant motivating factor.  Docket No. 2, Ex. 6, pp. 9-10, ¶ 30.  Generally, this factor is in the province of the fact-finder, but Plaintiff cannot rely on this to avoid her pleading burden under Fed. R. Civ. P. 12(b)(6).

Plaintiff alleges she filed a grievance as to Elliott, who was placed on leave in March 2024 while Plaintiff was promoted to Interim Coordinator, and that she filed ORA requests

19

in December 2024, and was fired in January 2025. Plaintiff alleges that, on January 21, 2025, during the executive session that led to her termination, Hanning asserted that "Plaintiff had a character flaw because she used her position for special treatment." Docket No. 2, Ex. 6, p. 8, ¶ 26. Hanning's alleged accusation that Plaintiff used her position for special treatment has no connection to either her grievance as to Elliott or an ORA request. "While [Plaintiff] is not required to prove its case in the pleadings, the complaint must allege *facts* which plausibly support the allegation that [Defendant's] alleged actions involved a retaliatory motive." *Glover v. Mabrey*, 384 Fed. Appx. 763, 772 (10th Cir. 2010) (citing *Iqbal*, 556 at 682). The undersigned Magistrate Judge notes that even considering the approximate month between her ORA request and her employment termination, such temporal proximity standing alone is insufficient to establish an inference of retaliatory motive in this legal context. *See Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014) ("[T]emporal proximity between the protected speech and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive."). Plaintiff provides no facts that a substantial motivating factor in her termination was any protected activity, and she therefore fails to state a claim of First Amendment retaliation as to Hanning.

## B.     FLSA Unpaid Wages and Overtime (Board).

Plaintiff alleges in her First Amended Petition that, while working for E-911 and the Board, she routinely worked overtime but was neither paid overtime nor given compensatory time off. She alleges that she was therefore not compensated as required by the FLSA, and that she should be reimbursed for her reasonable fees and court costs.

Docket No. 2, Ex. 6, pp. 10-11, ¶¶ 38-43.  Related factual allegations in the First Amended Petition are that several employees made complaints about Elliott to Human Resources, which include allegations she violated the FLSA.  Plaintiff alleges she made a complaint about Elliott but does not indicate on what grounds.[9] *Id.*, pp. 2-3, ¶¶ 8-9.

The FLSA, 29 U.S.C. §§ 201-219, "protect[s] all covered workers from substandard wages and oppressive working hours." *ElHelbawy v. Pritzker*, 663 Fed. Appx. 658, 663 (10th Cir. 2016) (internal quotations and citations omitted).  Section 206(a)(1) of the FLSA sets a minimum wage, and Section 215(a)(2) enforces it.  Generally, employees who work more than 40 hours in a workweek are due overtime compensation of at least one-and-one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1).  "[T]he Tenth Circuit has yet to adopt a specific approach for determining the level of detail needed in an FLSA []claim to overcome a Rule 12(b)(6) motion." *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220, 1223 (D.N.M. 2018).  At the least, however, it seems apparent that the allegations must allege that Plaintiff "worked more than 40 hours in any week [and] that, if she did, she was not paid overtime for those hours." *ElHelbawy*, 663 Fed. Appx. at 663.  Plaintiff merely alleges that she worked overtime, and that she was not paid overtime or provided with compensatory time.  Plaintiff does not allege she worked 40 hours per week and likewise provides no relevant timeframe for these allegations.  Plaintiff provides insufficient factual context to nudge her claims from conceivable to plausible to state a claim for relief for

---

[9] Later allegations in the First Amended Petition, as part of Plaintiff's FLSA retaliation claim, indicate that Plaintiff's grievance included a complaint regarding lack of overtime pay.  Docket No. 2, Ex. 6, p. 12, ¶ 46.

failure to pay overtime. Her assertions are merely conclusory statements that do not set forth any facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The undersigned Magistrate Judge therefore recommends that Plaintiff's claim for an FLSA violation based on unpaid wages and overtime be dismissed.

**C.    FLSA Retaliation (Elliott, Hanning, and Board).**

Next is Plaintiff's claim of FLSA retaliation. Plaintiff alleges she engaged in protected conduct by: (i) submitting a written grievance against Elliott that included an assertion of lack of overtime pay, and (ii) refusing to retaliate against other individuals as demanded by Elliott. Docket No. 2, Ex. 6, p. 12, ¶ 46. Plaintiff further alleges that "Defendants retaliated against Plaintiff . . . by terminating Plaintiff, and creating a hostile work environment and the availment of her rights was a significant motivating factor in her termination." *Id.*, ¶ 47. Plaintiff vaguely alleges that Elliott and Hanning both "attempted to dissuade plaintiff to not exercise her rights and terminated Plaintiff for a sham reason." *Id.* Plaintiff includes no further information as to when, where, or how either Elliott or Hanning took these actions, either together or separately.

*a.  Elliot*

Plaintiff alleges in her First Amended Petition that the FLSA allows for individual liability under an economic realities test. Docket No. 2, Ex. 6, p. 12, ¶ 48. Plaintiff cites "***Hodson** v. Okada*, 472 F.2d 965, **1156, 1160** (10th Cir. **2018**); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (**10th Cir.** 1991)." *Id.* (emphasis added). The cases cited in the First Amended Petition, however, are incorrectly cited and one lacks precedential value. The apparent correct citations for these cases are as follows: *Hodgson v. Okada*, 472 F.2d

965 (10th Cir. 1973), a 1973 case which ends on page 969 (meaning the pinpoint cite does not exist as to this case), as well as *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991), a case from an entirely different Circuit. Other courts to address the issue extend liability only to "a person acting on behalf of the actual employer . . . with respect to the employment relationship[.]" *Diaz v. Longcore*, 751 Fed. Appx. 755, 758 (6th Cir. 2018).

Plaintiff attempts to conflate her March 2024 grievance with her employment termination in January 2025, but a significant intervening factor as admitted in the First Amended Petition is that Elliott was placed on administrative leave after March 12, 2024. Plaintiff's response brief acknowledges what she states in the First Amended Petition: that Hanning was a decisionmaker in her employment termination, not Elliott. The Tenth Circuit recently approved the "economic reality test" for determining whether an individual qualifies as an FMLA employer[,]" and the Tenth Circuit noted at the time that the FMLA definition of "employer" "largely tracks the FLSA's definition of employer[.]" *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1342 (10th Cir. 2025) (internal quotation omitted).

The economic-reality test requires the Court to assess, under the totality of the circumstances, "whether the alleged individual [i] has the power to hire and fire employees; [ii] supervises and controls employee work schedules or conditions of employment; [iii] determines the rate and method of payment; and [iv] maintains employment records." *Gnapi v. Am. Farmers & Ranchers Mut. Ins. Co.*, 2022 WL 1213131, at *2 (W.D. Okla. Apr. 25, 2022) (quotation omitted). None of these factors apply to Elliott at the time of

Plaintiff's termination. For these reasons, the undersigned Magistrate Judge finds Plaintiff fails to state an FLSA retaliation claim as to Elliott.

The undersigned Magistrate Judge finds this question of liability does not have to be resolved as to Elliott because Elliott was not employed by E-911 or the Board at the time of Plaintiff's adverse employment action, and was therefore not a "person acting directly OR indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d) (defining employer under the FLSA) (emphasis added). Accordingly, whether an individual supervisor or manager can be held liable is irrelevant here because Elliott was neither at the time of the adverse employment action.[10]

### b.  Hanning

Under 29 U.S.C. § 215(a)(3), "it shall be unlawful for any *person* . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" (emphasis added). And while any *person* who violates § 215 is, upon conviction, liable for a fine, *see* 29 U.S.C. § 216(a), "[a]ny *employer* who violates the provisions of section 215(a)(3) or 218d of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title[.]" § 216(b) (emphasis added). Although only persuasive authority, the undersigned

---

[10] Plaintiff attempts to argue that her allegations of a hostile work environment while Elliott was still her supervisor also constitute an adverse employment action, but the First Amended Petition only alleges specific actions by Elliott as to Plaintiff on March 12, 2024. Although the allegations from that day are serious, the result as identified in the First Amended Petition is that on March 13, 2024, Plaintiff was placed in an Interim supervisor role and Elliott was placed on administrative leave. This does not constitute an adverse employment action.

Magistrate Judge is inclined to agree with the Southern District of Florida that "[t]hese provisions make clear that, under the FLSA, a 'person' may be fined or imprisoned for violating section 215(a)(3) whereas legal or equitable relief may only be obtained against an 'employer.'" *Poole v. City of Plantation, Fla.*, 2006 WL 8432490, at *3 (S.D. Fla. May 17, 2006). District courts in the Second Circuit have similarly concluded that "Congress concluded its objectives would be best served by extending criminal liability to all persons who engage in prohibited retaliation while limiting the private remedy to be only against employers who engage in such retaliation." *Kim v. Lee*, 576 F. Supp. 3d 14, 29 (S.D.N.Y. 2021), *affirmed*, 2023 WL 2317248 (2d Cir. Mar. 2, 2023). Such an interpretation is still in keeping with the Tenth Circuit's holding that "the anti-retaliation provisions of FLSA apply to any person regardless of whether that person is an enterprise engaged in commerce." *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1136 (10th Cir. 2018). For these reasons, the undersigned Magistrate Judge finds Plaintiff has failed to state an FLSA retaliation claim as to Hanning.

*c. Board*

For FLSA retaliation claims, courts are instructed to apply the shifting burden of proof scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under *McDonnell Douglas*, the plaintiff must first prove a prima facie case of discrimination. If she does so, then the burden 'shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.' If the defendant provides such a reason, 'the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that

the employer's explanation is pretext.'" *Morman v. Campbell Cty. Mem. Hosp.*, 632 Fed.
Appx. 927, 933 (10th Cir. 2015) (quoting Khalik, 671 F.3d at 1192). "To establish a prima
facie case of FLSA retaliation, a plaintiff must show that: (1) he or she engaged in activity
protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent
to or contemporaneous with such employee activity; and (3) a causal connection existed
between the employee's activity and the employer's adverse action." *Conner v. Schnuck
Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (citations omitted). These elements
can be contrasted with broader elements set forth by other Circuit courts, including the
Second Circuit, which does not require the adverse act to be committed by the "employer."
*See, e.g., Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) ("[A] plaintiff alleging
retaliation under FLSA must first establish a prima facie case of retaliation by showing
(1) participation in protected activity known to the defendant, like the filing of a FLSA
lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection
between the protected activity and the adverse employment action.") (citing *Cruz v. Coach
Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). The first two elements are easily met.
Plaintiff, as discussed above, engaged in protected activity in March 2024 when she
reported alleged violations of the FLSA as part of her complaint regarding Elliott.
Furthermore, she was terminated in January 2025 after she engaged in this protected
activity.

Defendant's arguments appropriately center on the third prong – a causal connection
– given the time elapsed between March 2024 and January 2025. The Board contends that
Plaintiff's allegations of FLSA retaliation are conclusory, noting that Plaintiff's complaints

relate to alleged FLSA violations submitted in March 2024, at which time she received a promotion. The Board thus argues that any allegation that Plaintiff's employment termination in January 2025 was related to her March 2024 FLSA allegations is speculative and lacks a basis in the facts because the time between the two is too long.

"[T]ermination following protected activity may create an inference of causation, but '[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity.'" *Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1170 (D. Colo. 2019) (quoting *Conner*, 121 F.3d at 1395). Generally, the sufficiency of temporal proximity falls somewhere between six weeks or less and three months. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (citations omitted)). Plaintiff contends, however, that her December 2024 ORA requests likewise related to her FLSA complaint and constitute protected activity because they sought the communications between Hanning and Elliott related to the March 2024 complaint against Elliott. Plaintiff alleges that the December 2024 ORA request was therefore sufficiently close in time to her January 2025 employment termination to allege the requisite causal connection. The December 13, 2024, ORA request for records between Elliott and Hanning was five weeks and two days prior to Plaintiff's employment termination. Though perhaps a close call, the undersigned Magistrate Judge agrees that the December 13 ORA request relates to Plaintiff's protected

activity because she requested communications between Hanning and Elliott in the March 2024 time period. At this stage of the case, the undersigned Magistrate Judge thus finds that Plaintiff has sufficiently alleged an inference of causation through temporal proximity. Because Plaintiff has alleged facts that could support a prima facie case of FLSA retaliation, the undersigned Magistrate Judge finds that this claim should not be dismissed as to the Board.

**D.    FMLA Interference (Hanning & Board).**

The FMLA permits eligible employees to take leave for serious health conditions and prohibits employers from retaliating against employees for doing so. *See* 29 U.S.C. §§ 2612(a), 2615(a)(2); *see also Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-1171 (10th Cir. 2006). The FMLA defines "employer" to "include[ ] . . . any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii). As noted above in the FLSA context, the Tenth Circuit recently held that "(1) the FMLA permits individual liability and (2) the economic reality test determines whether an individual qualifies as an FMLA employer." *Walkingstick Dixon*, 125 F.4th at 1342. The economic-reality test requires the Court to assess, under the totality of the circumstances, "whether the alleged individual [i] has the power to hire and fire employees; [ii] supervises and controls employee work schedules or conditions of employment; [iii] determines the rate and method of payment; and [iv] maintains employment records." *Gnapi*, 2022 WL 1213131, at *2 (citation omitted) (quoting *Zisumbo v. Convergys Corp.*, 2020 WL 3546794, at *11 (D. Utah June

30, 2020) (quoting *Saavedra v. Lowe's Home Ctrs*., Inc., 748 F. Supp. 2d 1273, 1292 (D.N.M. 2010)).

Plaintiff alleges in the First Amended Petition that she learned in June 2024 that she needed major spine surgery, and underwent that surgery on June 23, 2024, and was hospitalized overnight. After her June 24 hospital discharge, Plaintiff was scheduled to return to work on a modified work schedule two weeks later, so she submitted FMLA paperwork. Hanning's predecessor as Board Chairman, Tim Kelley, approved the FMLA leave. Docket No. 2, Ex. 6, p. 7, ¶ 22. Furthermore, Plaintiff alleges that she applied for and was approved intermittent leave as a result of her serious health condition. *Id.*, p. 13, ¶ 57. She alleges Hanning and the Board interfered with her FMLA rights "as set forth above." *Id.*, p. 14 ¶¶ 58, 62.

"To establish an FMLA interference claim, an employee must show that (1) [s]he was entitled to FMLA leave, (2) an adverse action by h[er] employer interfered with h[er] right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (quotation omitted). "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214. "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does *not* apply to interference claims[.]" *Metzler*, 464 F.3d at 1180 (10th Cir. 2006) (citing *Bones v. Honeywell Int'l,*

*Inc.,* 366 F.3d 869, 877 (10th Cir. 2004) (citing *Smith v. Diffee Ford-Lincoln-Mercury,* 298 F.3d 955, 960, 963 (10th Cir. 2002). At the motion to dismiss stage, Plaintiff has the burden to plead the first two elements, because the burden for the third element lies with Defendants. *See Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) ("If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not related to the exercise or attempted exercise of [the employee's] FMLA rights.") (quotation omitted).

Plaintiff's First Amended Petition alleges that Hanning called Plaintiff while she was out on FMLA leave, placing her on speakerphone during a Board meeting and asking her to discuss and then provide communications related to her FMLA leave. Defendants contend Plaintiff fails to allege in any way how her rights were interfered with because she was able to have her surgery and take off the needed time. Plaintiff's Response sets forth the law related to FMLA interference claims, then concludes without further discussion that she has alleged her FMLA rights were interfered with.

Assuming *arguendo* that both Hanning and the Board can be considered Plaintiff's employers, the undersigned Magistrate Judge nevertheless finds that Plaintiff fails to allege facts that either Defendant took adverse action that interfered with her right to take FMLA leave. While Plaintiff appropriately alleges that she was entitled to FMLA leave, she fails at the second element. Plaintiff only alleges that Hanning called her regarding her FMLA leave and asked for documentation. While such actions could be conceived as criticism, they do not rise to the level of interference required to state a claim. And Plaintiff actively

alleges that Kelley, as Chairman of the Board, approved her FMLA leave.  This is the only passing reference to the Board as relates to this claim.  "To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—'the employee must show that she was prevented from taking the full 12 weeks[ ] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.'"  *Dalpiaz*, 760 F.3d at 1132 (quoting *Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282, 1287 (10th Cir. 2007); *see also* 29 C.F.R. § 825.216(a)(1) (containing limitations on an employees' right to reinstatement).  Plaintiff alleges none of these as to either Defendant.  Furthermore, even "comments that merely criticize an employee for taking leave, especially those made after an employee returns from leave, do not create a 'powerful disincentive' to an employee's assertion of FMLA rights."  *Schlagel v. Disc. Tire Co. of Colorado, Inc.*, 2025 WL 316549, at *6 (D. Colo. Jan. 28, 2025) (quoting *Mardis v. Cent. Nat'l Bank & Tr. of Enid*, 173 f.3d 864, 1999 WL 218903, at *2 (10th Cir. Apr. 15, 1999) (unpublished table opinion); *see also Ford v. Brennan*, 2023 WL 5606233, at *3 (10th Cir. Aug. 30, 2023) (Plaintiff "does not assert an adverse employment action related to the exercise of his protected leave.  He alleges several instances of potential interference, including letters of warning; his supervisors' harassment; and failure to reinstate after taking protected leave. . . . At no point was Ford prevented from taking his full 12 weeks of leave guaranteed by the FMLA or denied any rights pursuant to the Act.  While this court does not condone Gunnarson and Clark's criticism of Ford's FMLA use, our precedent indicates such comments, without more, do not amount to 'an adverse employment decision [ ] made before the employee has been allowed to take FMLA leave

or while the employee is still on FMLA leave.'") (quoting *Dalpiaz*, 760 F.3d at 1132).
Thus, Plaintiff fails to sufficiently allege the second element of an FMLA interference
claim and the claim should therefore be dismissed.

E.    **FMLA Retaliation (Hanning & Board).**

Hanning called a special meeting of the Board on June 28, 2024, regarding
Plaintiff's Interim Coordinator position.  Plaintiff alleges Hanning "retaliated against
Plaintiff during this meeting, by placing her on speakerphone while she was at home
recovering from surgery, on pain medication, and on FMLA approved leave.  Hanning
demanded to know who Plaintiff informed about her surgery, when she would be returning
to work, and who was covering her position in her absence." *Id.*, p. 8, ¶ 23.  When he was
informed that Mr. Kelley approved Plaintiff's leave, Hanning requested Plaintiff provide
correspondence between herself and Mr. Kelley to the County Clerk.  The Board took no
action as to Plaintiff at that meeting. *Id.*  Plaintiff's employment was terminated in January
2025.  Plaintiff's cause of action for FMLA retaliation alleges that she availed herself of
her FMLA rights and Defendants retaliated against her for doing so.  Docket No. 2, Ex. 6,
p. 15, ¶¶ 65-66.

FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting test.
*Dewitt v. Southwestern Bell Telephone Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017).  "Under
this analysis, the plaintiff bears the initial burden of establishing a prima facie case of
retaliation," by proving that "(1) she engaged in a protected activity; (2) [Defendant] took
an action that a reasonable employee would have found materially adverse; and (3) there
exists a causal connection between the protected activity and the adverse action." *Metzler*,

32

464 F.3d at 1170-1171 (footnote omitted). If Plaintiff establishes a prima facie case, "[D]efendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* at 1170 (citation omitted). The *McDonnell Douglas* prima facie case standard is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). "Still, *Twombly* and *Iqbal* require that a plaintiff allege a plausible claim[, and] we can evaluate her claim's plausibility only by considering the prima facie case of discrimination that she would need to prove in court." *Morman*, 632 Fed. Appx. at 933. "In pleading a discrimination claim, she need not set forth a prima facie case for discrimination. But she must allege facts that make such a claim at least plausible." *Id.* The Board and Hanning both contend that Plaintiff's claim for FMLA retaliation fails because Hanning was not solely responsible for Plaintiff's termination, and the claim is devoid of factual allegations to support a claim against either Hanning or the Board. Plaintiff simply responds that she had stated a sufficient claim for relief.

For both Hanning and the Board, Plaintiff readily establishes the first prong of her prima facie case because she engaged in protected activity when she took FMLA leave in June 2024. A recent Supreme Court decision appears to modify the second prong requirement that the adverse employment action must be "material," or "significant." "To demand 'significance' is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a [FMLA] claimant, so that the law as applied demands something more of her than the law as written." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). Even with this clarification, however,

33

the second prong nevertheless requires Plaintiff to "show some harm respecting an identifiable term or condition of employment." *Id.* A generous construction of Plaintiff's First Amended Complaint raises two possibilities for actions that a reasonable employee may have considered adverse: (i) Hanning's phone call to Plaintiff during a Board meeting while she was out on FMLA leave, and (ii) her termination. Termination is easily considered materially adverse. *See Metzler*, 464 F.3d at 1171("[A]ny reasonable employee would have found termination materially adverse."). Hanning's phone call during the Board meeting is not, however, because Plaintiff fails to identify any harm related to the terms or conditions of employment. Indeed, Plaintiff alleges the Board "voted to take no action during the meeting, leaving Plaintiff in the Interim Coordinator position." Docket No. 2, Ex. 6, p. 8, ¶ 23. Only Plaintiff's termination, then, establishes the second prong. This nevertheless presents a problem for the third prong. Given the only alleged adverse employment action was Plaintiff's termination, temporal proximity alone is insufficient to establish the causal connection required for the third prong, given that over six months elapsed between Plaintiff's FMLA leave and her employment termination. *See Anderson*, 181 F.3d at 1179 ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (citations omitted)).

Accordingly, the undersigned Magistrate Judge recommends that Plaintiff's claim for FMLA retaliation as to both Hanning and the Board be dismissed for failure to state a claim. In light of this finding, the undersigned Magistrate Judge declines to assess, at this

stage of the case, whether Hanning is considered an employer pursuant to the economic realities test for purposes of this claim.

**F.    Breach of Contract (Board).**

Plaintiff alleges that she had an employment contract with the Board through the Wagoner County Personnel Policy Handbook ("Handbook"), which she alleges the Board breached through retaliation and interference with FMLA-approved leave.    Plaintiff includes excerpts from the Handbook in her First Amended Petitions and attached the entire Handbook as an exhibit to the First Amended Petition.  *See* Docket No. 2, Ex. 6, pp. 15-19, ¶¶ 67-74 & pp. 23-44.[11]   Under Oklahoma law, the elements for a breach of contract claim are: "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach."  *Cates v. Integris Health, Inc.*, 2018 OK 9, ¶ 11, 412 P.3d 98, 103.

The Board contends there is no contract because the Handbook states that it is not a contract for employment.  *See* Docket No. 2, Ex. 6, p. 26 ("This handbook is designed to familiarize you with the policies and practices that apply to your employment.  It is not intended to be and does not constitute a contract of employment.").  Furthermore, the Board contends that there was no breach of contract because Plaintiff's allegations fail to establish FMLA interference or retaliation.    Plaintiff nevertheless contends that she has appropriately alleged an implied contractual right to certain procedures, and that the

---

[11] The excerpts include language related to "Earning Overtime" and "Compensatory Time Off for Overtime," which relate to the FLSA, as well as FMLA.  Although Plaintiff only makes specific reference to FMLA leave in the allegations following these excerpts, the undersigned Magistrate Judge addresses this claim out of an abundance of caution considering the recommendation that Plaintiff's FLSA claim as to the Board should not be dismissed.

existence of an implied contract is generally a question of fact. Furthermore, she contends that any disclaimer of contractual rights as to an employee must be clear.

"An implied contract is one, the existence and terms of which are manifested by conduct." 15 Okla. Stat. § 133. "[A]n employee handbook may form the basis of an implied contract between an employer and its employees if four traditional contract requirements exist: (1) competent parties, (2) consent, (3) a legal object and (4) consideration[,]" but "an employer may deny (or disclaim) any intent to make the provisions of a personnel manual part of the employment relationship," although "the disclaimer must be clear" and the employer's conduct does not negate the disclaimer's effect. *Russell v. Board of County Commissioners, Carter County*, 1997 OK 80, ¶¶ 23-24, 952 P.2d 492, 501-502. An employer's conduct that is inconsistent with the disclaimer may negate the disclaimer's effect, and "[t]he efficacy of a disclaimer is generally a mixed question of law and of fact." *Id.*

The Handbook in this case contains a clear disclaimer on the part of the Board, as described above. Furthermore, the Acknowledgement Form requiring an employee's signature states, in bold, "**I further understand The Handbook is not, nor is it intended to be a contract of employment. I further understand the County Elected Official retains the right of employment-at-will to terminate his/her employees at any time for any reason not prohibited by Federal, State or Municipal law. Employees may also terminate at will.**" Docket No. 2, Ex. 6, p. 24. Plaintiff does not allege that either of these disclaimers was negated by the Board's conduct and relies solely on the manual to support her claim. The disclaimer is therefore effective. The undersigned Magistrate Judge

36

finds Plaintiff fails to allege a sufficient implied contractual right, and Plaintiff's breach of contract claim should be dismissed. *See also Webb v. City of Eufala*, 2018 WL 4690382, at *4 (E.D. Okla. Sept. 28, 2018) ("Here, there is a clear disclaimer on the part of the Defendant, and thus no contract. Defendant City of Eufaula is entitled to dismissal of Plaintiff's claim for breach of contract (Count III)."); *see also Maxey v. Ezzell*, 2013 WL 6850792, at *2 (E.D. Okla. Dec. 30, 2013) ("[P]laintiff cites the portion of the personnel materials stating that the employer may not violate federal or state law.  The court finds that this provision does not create an implied contract, but merely states the truism that 'at will' employment does not mean an employer is exempt from the specific remedy provided by the violation of a specific law.").

## G.    Promissory Estoppel (Board).

Plaintiff alleges alternatively to her breach of contract claim that she "relied to her detriment on the assurances provided by Defendant Board" such that a contract should be enforced through promissory estoppel and/or detrimental reliance.  Docket No. 2, Ex. 6, p. 19, ¶ 75.  Other than incorporating the foregoing allegations of the First Amended Petition, Plaintiff does not further define "assurances provided by Defendant Board" in her one-paragraph cause of action.  "The elements necessary to establish promissory estoppel are: (1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." *Russell*, 1997 OK 80, ¶ 27, 952 P.2d at 503.

The Board asserts this claim should be dismissed because Plaintiff fails to identify any specific promises, instead making conclusory assertions that she relied to her detriment on "assurances."  Additionally, the Board contends Plaintiff's allegations substantively fails because she has failed to allege an act that could be reasonably characterized as retaliation for exercise of FMLA rights.  Plaintiff's only response is that the Board seeks to enforce the Handbook only for its benefit, and does not address questions regarding specific promises made.  If Plaintiff is alleging that she reasonably relied on promises regarding FMLA leave contained in the Handbook, she has failed to plead facts to make this claim viable.  The undersigned Magistrate Judge therefore recommends that Plaintiff's claim for promissory estoppel be denied.  *See, e.g.*, *McIntire v. Noble Energy, Inc.*, 2016 WL 11941721, at *5 (E.D. Okla. May 3, 2016) ("The court finds Plaintiffs have failed to plead facts which make a claim for promissory estoppel viable.") (citing *Twombly*, 550 U.S. at 570).

## H.    Malicious Interference with a Contractual Relationship (Elliott & Hanning).

Plaintiff alleges in the First Amended Petition that Elliott and "Hanning interfered with Plaintiff's contractual relationship by terminating her, and otherwise retaliating against her."  Docket No. 2, Ex. 6, p. 19, ¶ 76.  Further, she alleges Elliott and Hanning interfered with her employment "maliciously and without justification."  *Id.*, ¶ 77.

"Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship."  *Goff v. Hukill*, 2010 WL 2595785, at *7 (N.D. Okla. June 24, 2010), (citing *Gonzalez v. Sessom*, 2006 OK CIV APP 61, ¶ 16, 137 P.3d 1245, 1249; *McNickle v. Phillips Petroleum Co.*, 2001 OK

CIV APP 54, ¶ 21, 23 P.3d 949, 953-954; and *Harman v. Okla. ex. rel. N. Okla. Bd. of Regents*, 2007 WL 1674205, at *3 (W.D. Okla. June 7, 2007) (unpublished) (concluding that "[a]lthough there apparently is no Oklahoma Supreme Court authority directly recognizing [a tortious interference with prospective economic advantage] claim in the at-will employment context . . . lower Oklahoma courts have recognized the cause of action without hesitation")). "[A]n actual contract is not a requirement for recovery." *Goff*, 2010 WL 2595785, at *7; *see also Cooper v. Northwest Rogers County Fire Protection District*, 2017 WL 3710081, at *4 (N.D. Okla. Aug. 28, 2017) ("[T]he Oklahoma Court of Civil Appeals has held that an at-will contract of employment can form the basis for a malicious interference with a contractual relationship claim. The Court has found no decision of the Oklahoma Supreme Court to indicate that it would disagree with the Oklahoma Court of Civil Appeals on this issue. Moreover, several federal district courts have determined that an at-will employee may state a claim for malicious interference with a contractual relationship, relying on the decisions of the Oklahoma Court of Civil Appeals.") (internal citations omitted). In other words, "Plaintiff's status as an at-will employee of the County does not bar her tortious interference claim." *Wheeler v. Bd. of Cnty. Commissioners of the Cnty. of Leflore Cnty.*, 2022 WL 20099257, at *9 (E.D. Okla. Dec. 30, 2022), *report and recommendation adopted sub nom.*, 2023 WL 3568028 (E.D. Okla. May 19, 2023).

"The elements of a claim for [tortious] interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶¶ 14-15, 212 P.3d 1158,

1165 ("The terms 'malicious interference,' 'intentional interference,' and 'tortious interference' with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts[.]") (internal citations omitted). "The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. This element clearly requires a showing of bad faith." *Tuffy's*, 2009 OK 4, ¶ 14, 212 P.3d at 1165.

    *a. Elliott*

    Elliott contends this claim should be dismissed because the First Amended Petition only contains a conclusory allegation that Hanning and Elliott conspired to get her fired, along with the acknowledgement that Elliott was placed on leave in March 2024, with no allegation that her status changed by January 2025. The undersigned Magistrate Judge agrees that Plaintiff makes no allegations, other than conclusory suggestions of conspiracy, that Elliott took any specific action as to Plaintiff. Plaintiff's allegations that Elliott interfered with her employment by terminating her is insufficient, particularly where, as here, the First Amended Petition makes clear that Elliott had no official role in Plaintiff's termination as she herself had been placed on administrative leave some ten months prior. *See, e.g.*, *Coleson v. Feed the Child., Inc.*, 2022 WL 2655800, at *3 (W.D. Okla. July 8, 2022) ("There are simply no facts alleged that Ms. Moss gained, or attempted to gain, anything personally from participating in Plaintiff's termination. Without plausible factual allegations that Ms. Moss acted against FTC's interests in favor of her own, Mr. Coleson has failed to state a claim against Defendant Moss under Oklahoma common law for tortious interference."); *Wheeler*, 2022 WL 20099257, at *10 ("[A]lleging that the

Individual Defendants interfered with her employment by terminating her is not enough.")
(citing *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶¶ 17 & 19, 91 P.3d 673, 679 ("The
officer's actions cannot be characterized as malicious or in bad faith based only on the fact
of the interference with the contract. Here, the record is devoid of other evidence regarding
Chief's behavior or intentions toward Wilson in this context or any other. There is,
therefore, no legal basis for concluding that Chief operated outside the scope of his
employment.") (citing *Martin v. Johnson*, 1998 OK 127, ¶ 33, 975 P.2d 889, 896)); *Grillot
v. Oklahoma ex rel. University of Okla. Bd. of Regents*, 2019 WL 3558183, *4 (W.D. Okla.
Aug. 5, 2019) ("[F]or the exception to the general rule to apply with the result that the
tortious interference claim alleged in this action survives, the agent accused of tortious
interference must have acted against the interest of the principle *and* in furtherance of the
agent's own, personal interest. Moreover, to show that the agent was acting in his own
interests requires more than a showing of bad faith; plaintiff must show that the agent was
acting contrary to the business interest of his employer *and* in furtherance of the agent's
own, personal interests.") (citations omitted). For these reasons, the undersigned
Magistrate Judge finds Plaintiff fails to state a claim for malicious interference with a
contractual relationship as to Elliott.

    b.  *Hanning*

    Hanning likewise contends this claim against him should be dismissed, asserting
that Plaintiff's claims are conclusory and further fatal because Hanning is an agent of the
Board as one of the county commissioners. "A malicious interference claim 'is viable only
if the interferor is not a party to the contract or business relationship[,]' and an employee's

'interference with [an employer's] contract will be privileged only when the interference is undertaken in good faith and for a bona fide organizational purpose.'" *Cooper*, 2017 WL 3710081, at *5 (quoting *Wilspec Tech. Inc. v. DunAn Holding Group, Co.*, 2009 OK 12, ¶ 15, 204 P.3d 69, 74, & *Martin*, 1998 OK 127, ¶ 31, 975 P.2d at 896 (quotation omitted)). Hanning contends that, as a county commissioner, he is an agent acting in a representative capacity for a party to any contract. *See Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210 ("Hugoton cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract."). The exception applies when an agent acts in bad faith and against the interest of the employer/principal. *See Martin*, 1998 OK 127, ¶ 32, 975 P.2d at 896-897 ("If an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract."); (citations omitted) (emphasis in original). As noted above, merely alleging that Hanning interfered with Plaintiff's employment by terminating her is not enough. *See Wilson*, 2004 OK CIV APP 44, ¶ 19, 91 P.3d at 679 ("The officer's actions cannot be characterized as malicious or in bad faith based only on the fact of the interference with the contract. Here, the record is devoid of other evidence regarding Chief's behavior or intentions toward Wilson in this context or any other. There is, therefore, no legal basis for concluding that Chief operated outside the scope of his employment.") (citing *Martin*, 975 P.2d at 897).

Plaintiff alleges that Hanning interfered with her employment "maliciously and without justification," and by "otherwise retaliating against her." Docket No. 2, Ex. 6, p.

19, ¶¶ 76-77. In the facts provided related to her termination, Plaintiff alleges that Hanning was overheard alleging "Plaintiff had a character flaw because she used her position for special treatment. This assertion is an obvious pretext. It is false." *Id.*, p. 8, ¶ 26. Plaintiff, however, alleges no facts that Hanning acted in bad faith *specifically as to the termination of her employment*, and more importantly makes no allegations that Hanning's actions, with regard to her termination, were in furtherance of his own interest *or* contrary to the interests of her employer and not for a bona fide organizational purpose. *See Grillot*, 2019 WL 3558183, at *4 ("This discussion in *Martin* makes clear that for the exception to the general rule to apply with the result that the tortious interference claim alleged in this action survives, the agent accused of tortious interference must have acted against the interest of the principle *and* in furtherance of the agent's own, personal interest. Moreover, to show that the agent was acting in his own interests requires more than a showing of bad faith; plaintiff must show that the agent was acting contrary to the business interest of his employer *and* in furtherance of the agent's own, personal interests."). Accordingly, the undersigned Magistrate Judge finds Plaintiff fails to state a claim for malicious interference with a contractual relationship as to Hanning.

## CONCLUSION

In sum, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' Hanning, Wagoner County E-911 and Board of County Commissioners of Wagoner County's Motion to Dismiss and Brief in Support [Docket No. 19] be DENIED as to Plaintiff's claim for FLSA Retaliation as to the Board ONLY and otherwise GRANTED. Additionally, the undersigned Magistrate Judge RECOMMENDS that the Motion to

Dismiss of Defendant Judy Elliott and Brief in Support [Docket No. 20] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen days.

*See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any objection and response shall each

be limited to 10 pages and a reply is permitted only with leave of Court upon a showing of

good cause.

**DATED** this 18th day of November, 2025.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**